Lynn A. Kappelman, Esq.
Howard M. Wexler, Esq.
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
hwexler@seyfarth.com
lkappelman@seyfarth.com
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- X
SERGE RODRIGUE, individually and behalf : 
of all others similarly situated, :
                                          :
               Plaintiff,                 :        Civil Action No. 1:20-cv-01127-RPK-
                                          :                        RLM
        v.                                :
                                          :        Oral Argument Requested
LOWE'S HOME CENTERS, LLC, and             :
LOWE'S COMPANIES, INC.,                   :
                                          :
               Defendants.                :
------------------------------------------------------- X

-------------------------------------------------------

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## RULE 12(b)(6) MOTION TO DISMISS
## <u>PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

RELEVANT FACTS .............................................................................. 2

STANDARD OF REVIEW ...................................................................... 2

ARGUMENT ....................................................................................... 5

I.    Defendants are Authorized by the Commissioner to Pay Plaintiff and Others on a Bi-weekly Basis, Requiring Dismissal of Plaintiff's Allegations ........................... 5

    A.    North Carolina Law Commands that Home Centers, Inc. Continues to Exist Through Home Centers, LLC, and Home Centers, Inc.'s Authorization is Home Centers, LLC's Authorization ............................ 6

    B.    Government Records Demonstrate that Home Centers, Inc. Continues in Existence in a Different Business Form as Home Centers, LLC, and the Authorization is Valid for Home Centers, LLC ..................................... 8

    C.    Plaintiff's Argument in the Parties' Joint Supplemental Pre-motion Conference Letter is Abrogated by the New York Limited Liability Company Law, Which Supports the Continued Validity of the Authorization ............................................................................... 11

    D.    The New York Labor Law Supports the Continued Validity of the Authorization ............................................................................... 12

II.    The Labor Law Does Not Provide a Private Right of Action Under the Frequency of Payment Provision When Plaintiff Does Not Allege Unpaid Wages ................. 13

    A.    This Court Should Not be Guided by *Vega v. CM & Assoc. Constr. Mgmt.* Nor *Scott v. Whole Foods Mkt. Grp., Inc.* ........................................... 17

    B.    Liquidated Damages are Inapplicable and Unconstitutional For Untimely Wage Violations Where No Wages Remain Unpaid ................................. 20

    C.    Liquidated Damages Do Not Apply in this Action Because Defendants Acted in Good Faith ....................................................................... 22

III.    Defendants Issued Proper and Accurate Wage Statements in Compliance with the Labor Law ........................................................................................... 23

CONCLUSION .................................................................................... 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Arciello v. Cty. of Nassau*,
 No. 2:16-cv-3974, 2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. Sept. 20, 2019) ...............15, 19

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)................................................................................................................3

*Barfield v. N.Y. City Health & Hosps. Corp.*,
 537 F.3d 132 (2d Cir. 2008)..................................................................................................22

*Belizaire v. RAV Investigative and Sec. Servs. Ltd.*,
 61 F. Supp. 3d 336 (S.D.N.Y. 2014)...............................................................................16, 21

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................................2, 3

*Bon Aqua Int'l, Inc. v. Second Earth, Inc.*,
 No. 1:10cv169, 2013 U.S. Dist. LEXIS 11635 (M.D.N.C. Jan. 29, 2013),
 *R. & R. adopted*, 2013 U.S. Dist. LEXIS 203623 (M.D.N.C. Feb. 26, 2013) ..........................7

*Chambers v. Time Warner, Inc.*,
 282 F.3d 147 (2d Cir. 2002)....................................................................................................3

*Coley v. Vannguard Urban Improvement Ass'n*,
 No. 12-CV-5565, 2018 U.S. Dist. LEXIS 54609 (E.D.N.Y. Mar. 29, 2018)..............16, 19, 20

*Cruz v. TD Bank, N.A.*,
 22 N.Y.3d 61 (2013) .............................................................................................................19

*Cuzco v Orion Bldrs., Inc.*,
 No. 06 Civ 2789 (KMW) (WHK), 2010 U.S. Dist. LEXIS 51622 (S.D.N.Y.
 May 26, 2010)........................................................................................................................15

*Gardner v. D&D Elec. Constr. Co.*,
 No. 160249/2018, 2019 N.Y. Misc. LEXIS 4448 (N.Y. Sup. Ct., New York
 Cty, Aug. 7, 2019)..................................................................................................................16

*Global Network Commc'ns, Inc. v. City of New York*,
 458 F.3d 150 (2d Cir. 2006)....................................................................................................3

*Goel v. Bunge, Ltd.*,
 820 F.3d 554 (2d Cir. 2016)....................................................................................................3

*Goldman v. Barrett*,
No. 15 Civ. 9223 (PGG), 2017 U.S. Dist. LEXIS 117339 (S.D.N.Y. July 25, 2017), *aff'd* 733 Fed. Appx. 568 (2d Cir. 2018) ...................................................................4

*Hart v General Motors Corp.*,
129 A.D. 2d 179 (1st Dep't 1987, *lv denied* 70 N.Y.2d 608 (1987)..........................................6

*Hunter v. Planned Bldg. Servs., Inc.*,
No. 715053/2017, 2018 N.Y. Misc. LEXIS 2896 (N.Y. Sup. Ct. Queens Cty. June 11, 2018)........................................................................................................16, 24

*Hussain v. Pakistan Int'l Airlines*,
No. 11-CV-932, 2012 U.S. Dist. LEXIS 152254 (E.D.N.Y. Oct. 23, 2012)..........................15

*IKEA U.S. v. Industrial Bd. of Appeals*,
241 A.D.2d 454 (2nd Dep't 1997) ...........................................................................17, 18

*Inclan v. New York Hospitality Grp., Inc.*,
95 F. Supp. 3d 490 (S.D.N.Y. 2015).........................................................................22

*Java v. El Aguila Bar Rest. Corp.*,
No. 16-CV-6691 (JLC), 2018 U.S. Dist. LEXIS 69790 (S.D.N.Y. Apr. 25, 2018) ...................................................................................................................20

*Kruty v. Max Finkelstein, Inc.*,
No. 616616/2017, 2019 N.Y. Misc. LEXIS 6623 (N.Y. Sup. Ct. Suffolk Cty. Dec. 12, 2019)........................................................................................................16, 18

*In re Mason*,
600 B.R. 765 (Bankr E.D.N.C. 2019) ..........................................................................6

*Mendez v. U.S. Nonwovens Corp.*,
2 F. Supp. 3d 442 (E.D.N.Y. 2014) ..........................................................................15

*Mosquera v. Term Fulton Realty Corp.*,
No. 157650/2016, 2018 N.Y. Misc. LEXIS 5624 (N.Y. Sup. Ct. New York Cty. Nov. 27, 2018)..................................................................................................17

*Olmsted v. Pruco Life Ins. Co. of New Jersey*,
283 F.3d 429 (2d Cir. 2002)..................................................................................19

*Phillips v. Max Finkelstein, Inc.*,
115 N.Y.S. 3d 866 (N.Y. Sup. Ct. Suffolk Cty. 2019) ...............................................16, 18

*Ramsey v. Bimbo Foods Bakeries Distrib., LLC*,
No. 5:15-CV-6, 2015 U.S. Dist. LEXIS 47127 (E.D.N.C. April 10, 2015) ............................7

*Scott v. Whole Foods Mkt. Grp., Inc.*,
   No. 18-cv-0086, 2019 U.S. Dist. LEXIS 61726 (E.D.N.Y. Apr. 9, 2019), *aff'd*,
   No. 18-cv-0086 (E.D.N.Y. Feb. 5, 2020) ...................................................................17, 18, 19

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004)....................................................................................................4

*Southern Inv. Props., LLC v. Watson*,
   No. COA04-49, 2004 N.C. App. LEXIS 2255 (N.C. Ct. App., Dec. 21, 2004)......................8

*State Farm Mut. Automobile Ins. Co. v. Campbell*,
   538 U.S. 408 (2003)............................................................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..............................................................................................................3

*Thomas v. iStar Financial, Inc.*,
   652 F.3d 141 (2d Cir. 2010)................................................................................................21

*Vale v. Great Water Pollution Control Dist.*,
   80 F. Supp. 3d 426 (E.D.N.Y. 2015) ....................................................................................4

*Vega v. CM & Assoc. Constr. Mgmt., LLC*,
   175 A.D.3d 1144 (1st Dep't 2019) ................................................................................17, 18

*Volpe v. Nassau County*,
   915 F. Supp. 2d 284 (E.D.N.Y. 2013) ..................................................................................4

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
   127 F. Supp. 3d 156 (S.D.N.Y. 2015)...................................................................................4

*Whitman v. American Trucking Assns., Inc.*,
   531 U.S. 457 (2001)............................................................................................................19

*Yu Y. Ho v. Sim Enters., Inc.*,
   No. 11 Civ. 2855 (PKC), 2014 U.S. Dist. LEXIS 66408 (S.D.N.Y. May 14,
   2014) ...................................................................................................................................15

*In re Zypreza Prods. Liability Litig.*,
   549 F. Supp. 2d 496 (E.D.N.Y. 2008) ..................................................................................4

**Statutes**

Fair Labor Standards Act ...........................................................................................................22

N.C. Gen. Stat. § 55-1-01 *et seq.* ...........................................................................................6, 7

N.C. Gen. Stat. § 55-11A-10.......................................................................................................6

iv

N.C. Gen. Stat. § 55-11A-13(a) ................................................................................7

N.C. Gen. Stat. § 55-11A-13(a)(1) .........................................................................7, 8

N.C. Gen. Stat. § 57D-1-01 *et seq.* .........................................................................6

N.C. Gen. Stat. § 57D-9-20 .....................................................................................6

N.C. Gen. Stat. § 57D-9-23 .....................................................................................8

N.C. Gen. Stat. § 57D-9-23(a) ................................................................................7

N.C. Gen. Stat. § 57D-9-23(a)(1) ...........................................................................7

N.C. Gen. Stat. § 57D-9-23(b) ................................................................................7

N.Y. Ltd. Liab. Co. Law § 801 ................................................................................11

N.Y. Ltd. Liab. Co. Law § 802 ................................................................10, 11, 13

N.Y. Ltd. Liab. Co. Law § 805 ................................................................................11

N.Y. Ltd. Liab. Co. Law § 801(a) ...........................................................................6

New York Labor Law ...................................................................................1, 12, 13

NYLL Article 6 .......................................................................................................12

NYLL § 162 .............................................................................................................19

NYLL § 191 ..................................................................................................*passim*

NYLL § 191(1) ........................................................................................................14

NYLL § 191(1)(a) ..........................................................................................1, 5, 17

NYLL § 191(1)(a)(i) .......................................................................................1, 5, 16

NYLL § 191(1)(a)(ii) ...............................................................................................5

NYLL § 195 .............................................................................................................12

NYLL § 195(1) ........................................................................................................19

NYLL § 195(3) ..............................................................................................*passim*

NYLL § 195(4) ........................................................................................................19

NYLL § 195(5) ........................................................................................................19

NYLL § 198 ..............................................................................................................1, 20

NYLL § 198(1-a) ........................................................................................... *passim*

NYLL § 218 ...................................................................................................20

NYLL § 218(1) ...............................................................................................20

NYLL § 218(5) ...............................................................................................12

NYLL § 219 ...................................................................................................12

NYLL § 219(4) ...............................................................................................12

## Other Authorities

5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007) ...........................................3

Fed. R. Civ. P. 12(b)(6) ......................................................................1, 3, 4, 25

New York Constitution .......................................................................................21

64885490v.1

Lowe's Home Centers, LLC ("Home Centers, LLC") and Lowe's Companies, Inc. ("Companies, Inc.") (collectively, "Defendants"), by and through their attorneys, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss the First Amended Complaint ("Amended Complaint") of Plaintiff ("Plaintiff" or "Rodrigue"), pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's Amended Complaint must be dismissed because Defendants are properly authorized to pay manual workers bi-weekly.  As a result, Plaintiff, who purports to be a manual worker, fails to assert facts that establish cognizable claims against Defendants for violations of New York Labor Law ("NYLL" or the "Labor Law").  Specifically, Plaintiff claims Defendants (1) improperly paid him on a bi-weekly basis, rather than weekly, in violation of NYLL § 191(1)(a)(i); and (2) failed to provide him with accurate wage statements in violation of NYLL § 195(3).  As described below, each of Plaintiff's claims must be rejected under Rule 12(b)(6).

First, Plaintiff asserts a cause of action under NYLL § 191(1)(a)(i), claiming that because he is a manual worker, Defendants improperly paid him bi-weekly, rather than weekly as required by the Labor Law.  Am. Compl. ¶¶ 4–6; 45–46, Dkt. No. 18.  Plaintiff's claim fails as a matter of law because even assuming *arguendo* that he is a manual worker, Defendants are properly authorized by the Commissioner of Labor of the State of New York (the "Commissioner") to pay manual workers bi-weekly pursuant to an authorization provided in April 1999 (the "Authorization").  Additionally, assuming *arguendo* that Plaintiff is a manual worker and that the Authorization is somehow deficient, the Amended Complaint should nonetheless be dismissed as no private right of action exists for Plaintiff to bring a cause of action for a purported late payment of wages under NYLL §§ 191(1)(a) or 198.

1

Second, Plaintiff's allegation that Defendants failed to supply accurate statements of wages under NYLL § 195(3) derives from his unsuccessful allegation that Defendants improperly paid him on a bi-weekly basis.  Contrary to Plaintiff's contention, NYLL § 195(3) does not require wage statements to show "hours worked per week,"  rather, it only requires "the number of regular hours worked, and the number of overtime hours worked."  Defendants properly supplied Plaintiff with accurate statements of wages, which included the proper number for hours worked.  As the Commissioner authorized Defendants to pay manual workers bi-weekly and NYLL § 195(3) only requires Defendants to provide a wage statement with every payment of wages, the wage statements properly included the number of hours worked per pay period.

For these and other reasons set forth below, Defendants respectfully submit that Plaintiff's Amended Complaint must be dismissed in its entirety and with prejudice.

## RELEVANT FACTS

Plaintiff alleges that he has been employed by both Defendants as a "Customer Service Associate" since around May 2016.  Am. Compl. ¶¶ 9; 36, Dkt. No. 18.  Plaintiff contends that he spends more than twenty-five percent of his shift performing physical tasks, and is therefore a "manual worker."  *Id*. at ¶¶ 38–39.  He further asserts that he and other manual workers are improperly paid on a bi-weekly basis.  *Id.* at ¶ 4.  Plaintiff complains that Defendants have not provided timely wages to him and other similar manual workers.  *Id.* at ¶¶ 5–6; 39; 46.  He also complains that Defendants have not provided him with accurate wage statements.  *Id.* at ¶¶ 42–43.

## STANDARD OF REVIEW

To survive a motion to dismiss, Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint."  *Id*. at 563.

A complaint will survive dismissal only if it contains "enough facts to state a claim to

relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 570).  A complaint that offers "naked assertions devoid of further actual

enhancement" is subject to dismissal.  *Id*. (internal quotation marks omitted).  In other words, the

complaint needs "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*.

When deciding a Rule 12(b)(6) motion to dismiss, "courts must consider the complaint in

its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of

which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S.

308, 322 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)).  Even if

documents are not expressly incorporated into the complaint by reference, documents that are

"integral" to the complaint may also be considered.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559

(2d Cir. 2016).  A document is integral to the complaint "where the complaint relies heavily

upon its terms and effect."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)

(internal quotation marks omitted).  "In most instances where this exception is recognized, the

incorporated material is a contract or other legal document containing obligations upon which

the plaintiff's complaint stands or falls, but which for some reason—usually because the

document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not

attached to the complaint."  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150,

157 (2d Cir. 2006).

The Court should consider all documents attached in support of Defendants' Motion to

Dismiss.  First, the Court should take judicial notice of the Authorization, a public record issued

by the New York State Department of Labor, a government entity.  *See In re Zypreza Prods. Liability Litig.*, 549 F. Supp. 2d 496, 501 (E.D.N.Y. 2008) ("Public documents issued by government agencies such as the Food and Drug Administration . . . may also be" judicially noticed); *Vale v. Great Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015) ("[I]n adjudicating [a Rule 12(b)(6)] motion, [courts] may take judicial notice of documents in the public record, which includes records and reports of administrative bodies . . . ." (second and third alterations in original) (quoting *Volpe v. Nassau County*, 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013))).  Additionally, judicial notice is critical when, as here, a document is integral to Plaintiff's ability to pursue his cause of action.   *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (document not expressly cited in complaint was "incorporated into the pleading because [it] was integral to [plaintiff's] ability to pursue" his cause of action).  Plaintiff's Amended Complaint hinges upon this Authorization not existing, which it clearly does.

Second, as to the various corporate forms, these documents are public records either available on the North Carolina's Secretary of State website or are government records filed with or issued by a government entity, and therefore, "it is clearly proper to take judicial notice" of these documents.  *See e.g.*, *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (explaining "[c]ourts routinely take judicial notice of such governmental records"); *Goldman v. Barrett*, No. 15 Civ. 9223 (PGG), 2017 U.S. Dist. LEXIS 117339, at *1 n.3 (S.D.N.Y. July 25, 2017), *aff'd* 733 Fed. Appx. 568 (2d Cir. 2018) ("This Court takes judicial notice of the Pennsylvania Secretary of State's records concerning Quackwatch's formation and dissolution.").  Therefore, all of Defendants' supplied documents should be considered without converting this motion to dismiss into one for summary judgment.

**ARGUMENT**

I.     **Defendants are Authorized by the Commissioner to Pay Plaintiff and Others on a Bi-weekly Basis, Requiring Dismissal of Plaintiff's Allegations**

Plaintiff's claim that Defendants failed to timely pay him and others in accordance with NYLL § 191(1)(a) has no legal basis.  NYLL § 191(1)(a) contains two subsections, both of which are at-issue.  Section 191(1)(a)(i) provides "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned . . . ."  Plaintiff asserts that despite being a manual worker, Defendants paid him and others bi-weekly instead of weekly as required by the Labor Law.  Am. Compl. ¶¶ 4–7; 45–46, Dkt. No. 18.  Yet, Plaintiff fails to appreciate the second subsection of NYLL § 191(1)(a).  Section 191(1)(a)(ii) provides, in relevant part, "[t]he commissioner may authorize an employer . . . to pay less frequently than weekly but not less frequently than semi-monthly."  Defendants are fully in compliance with  NYLL § 191(1)(a), as they have been authorized since April 1999 to pay manual workers bi-weekly wages.

In April 1999, the Commissioner advised Companies, Inc.—a named defendant—"that Lowe's Home Centers, Inc., has satisfied all of the conditions[1] enumerated in [NYLL § 191(1)(a)(ii),]" and therefore "grant[ed] authorization for Lowe's Home Centers, Inc., to pay wages to its manual workers employed in New York State on a biweekly basis" (the "Authorization").  Declaration of Howard M. Wexler ("Wexler Decl."), Ex. A.

In November 2013, Lowe's Home Centers, Inc. ("Home Centers, Inc."), a North Carolina corporation, converted its business form to a limited liability company, organized under the laws of North Carolina, resulting in Home Centers, LLC—a named defendant.  *See* Declaration of

---

[1] The Commissioner is required to consider the employer's history of meeting payroll responsibilities, proof of workers' compensation and disability coverage, proof of no outstanding warrants, and proof of a computerized record keeping system.  NYLL § 191(1)(a)(ii).

64885490v.1

Grace Ridley ("Ridley Decl."), ¶7, Ex. A.  The conversion permitted Home Centers, Inc. to convert to Home Centers, LLC without any break in the continuity of the legal entity.  By law and deed, Home Centers, LLC is the same entity as it was before the conversion.  By operation of law, the Commissioner's Authorization continues to be vested in Home Centers, LLC.

> **A.** **North Carolina Law Commands that Home Centers, Inc. Continues to Exist Through Home Centers, LLC, and Home Centers, Inc.'s Authorization is Home Centers, LLC's Authorization**

Under New York law, the laws of the jurisdiction under which a foreign LLC is formed govern its organization, internal affairs and the liability of its members and managers.  N.Y. Ltd. Liab. Co. Law § 801(a); *see also Hart v General Motors Corp*., 129 A.D. 2d 179, 183 (1st Dep't 1987, *lv denied* 70 N.Y.2d 608 (1987) (explaining the substantive law of the state or country of incorporation governs); *In re Mason*, 600 B.R. 765, 772 n.9 (Bankr E.D.N.C. 2019) ("New York . . . recognizes the internal affairs doctrine.").  Home Centers, LLC is organized under the laws of North Carolina.  *See* Ridley Decl., ¶¶5, 7, Ex. A.  The Court, in this instance, applies North Carolina laws.

As an initial matter, North Carolina permits conversions of corporations to limited liability companies.  *See* N.C. Gen. Stat. § 55-11A-10; N.C. Gen. Stat. § 57D-9-20.  The process and effects of a conversion of a North Carolina corporation to a North Carolina limited liability company are governed by both the North Carolina Limited Liability Company Act, N.C. Gen. Stat. § 57D-1-01 *et seq.,* and the North Carolina Business Corporation Act, N.C. Gen. Stat. § 55-1-01 *et seq.*

The North Carolina Limited Liability Company Act provides that upon the effectiveness of a conversion to an LLC, the following occurs:

> (1) *The converting entity ceases its prior form of organization and continues in existence as the surviving entity.*

(2)  ***The title to all real estate and other property owned by the converting entity continues to be vested in the surviving entity without reversion or impairment.***

(3)  All liabilities of the converting entity continue as liabilities of the surviving entity.

(4)  A proceeding pending by or against the converting entity remains pending by or against the surviving entity ***as if the conversion did not occur***.

(5)  The equity or beneficial ownership interests in the converting entity that are to be converted into ownership interests, obligations, or securities of the surviving entity or into the right to receive cash or other property are thereupon so converted, and the former holders of equity or beneficial ownership interests in the converting entity are entitled only to the rights provided, including by reference, in the plan of conversion and the surviving entity's operating agreement.

N.C. Gen. Stat. § 57D-9-23(a) (emphasis added).  The North Carolina Business Corporation Act provides for practically identical effects for the conversion of a corporation.  N.C. Gen. Stat. § 55-11A-13(a).  Both Acts provide the same specific guidance that a conversion does "not constitute a dissolution or termination of the converting" entity.  *See* N.C. Gen. Stat. § 55-11A-13(a); N.C. Gen. Stat. § 57D-9-23(b).  The law is clear that a converting entity continues in existence as the surviving entity.  *See* N.C. Gen. Stat. § 57D-9-23(a)(1); N.C. Gen. Stat. § 55-11A-13(a)(1).

North Carolina courts have treated a pre-conversion entity and a post-conversion entity as the same entity. *See, e.g., Bon Aqua Int'l, Inc. v. Second Earth, Inc.,* No. 1:10cv169, 2013 U.S. Dist. LEXIS 11635, at *3–4 n.1 (M.D.N.C. Jan. 29, 2013), *R. & R. adopted*, 2013 U.S. Dist. LEXIS 203623 (M.D.N.C. Feb. 26, 2013) (addressing claims against Joseph Charles LLC and Joseph Charles, Inc. only by reference to Joseph Charles LLC because Joseph Charles, Inc. was a North Carolina corporation that filed articles of conversion to Joseph Charles, LLC); *Ramsey v. Bimbo Foods Bakeries Distrib., LLC*, No. 5:15-CV-6, 2015 U.S. Dist. LEXIS 47127, at *1 n.1 (E.D.N.C. April 10, 2015) (explaining that although plaintiff sued defendant as both a

corporation and limited liability company, the case involves only one defendant in light of defendant's conversion from a corporation to a limited liability company); *Southern Inv. Props., LLC v. Watso*n, No. COA04-49, 2004 N.C. App. LEXIS 2255, at *8–9 (N.C. Ct. App., Dec. 21, 2004) (applying *res judicata* where an LLC that converted from a corporation attempted to bring previously litigated claims, and explaining that the record clearly indicates that at least the privies are the same).

Home Centers, Inc. did not dissolve or terminate, but instead ceased its form of organization as a corporation and continues to exist as a limited liability company.  *See* N.C. Gen. Stat. § 55-11A-13(a)(1).  Indeed, all assets, properties, debts and liabilities of Home Centers, Inc. continues to be vested in Home Centers, LLC.  *See* N.C. Gen. Stat. § 57D-9-23. This includes the Authorization.  By operation of law, the Authorization is property of Home Centers, Inc. that continues to be vested in Home Centers, LLC.

**B.     Government Records Demonstrate that Home Centers, Inc. Continues in Existence in a Different Business Form as Home Centers, LLC, and the Authorization is Valid for Home Centers, LLC**

In addition to the clearly delineated bases founded in law, records filed by and with government entities provide overwhelming support that Home Centers, Inc. continues to exist through Home Centers, LLC.   Home Centers, Inc.'s continued function through Home Centers, LLC provides that the Authorization applies today for Home Centers, LLC as it did for Home Centers, Inc. prior to and in 2013.

Home Centers, LLC maintains the same federal employer identification number as Home Centers, Inc. did prior to the conversion.  *See* Ridley Decl., ¶12, Exs. E & F.  Home Centers, LLC's North Carolina Secretary of State identification number is the same as Home Centers, Inc.'s North Carolina Secretary of State corporate identification number.  *See* Ridley Decl., ¶8, Exs. B & C.  Home Centers, LLC's Articles of Organization provides the same registered office

8

address and same principal office address as provided on Home Centers, Inc.'s Business Corporation Annual Report filed in 2013. *See* Ridley Decl., ¶9, Exs. A & B.

Home Centers, LLC's Limited Liability Company Annual Report filed in 2014, the first since the conversion, provides for all but one of the same "Company Officials" / "Principal Officers" that appeared on Home Centers, Inc.'s Business Corporation Annual Report filed in 2013. *See* Ridley Decl., ¶10, Exs. B & D. The wholly-owning entity—Companies, Inc.— remained the same before and after the conversion. *See* Ridley Decl., ¶¶4, 6. Companies, Inc. is a named defendant in this lawsuit and Plaintiff alleges it "has maintained control, oversight, and direction over Plaintiff and similar employees." Am. Compl. ¶ 19, Dkt. No. 18. Companies, Inc. was the sole parent company of Home Centers, Inc., and is the sole member of Home Centers, LLC. *See* Ridley Decl., ¶¶4, 6.

Furthermore, Home Centers, LLC maintains the same New York State Department of Labor Unemployment Insurance registration number and carrier identification number as Home Centers, Inc. did prior to the conversion. *See* Ridley Decl., ¶11, Exs. E & F. In 2015, Home Centers, LLC submitted a Business Tax Account Update to the New York State Department of Taxation and Finance explaining that Home Centers, Inc. "converted to an LLC with the same [federal employer identification number] already filed with [the Secretary of State.]" *See* Ridley Decl., ¶13, Ex. G.

Home Centers, LLC's Certificate of Existence certified by the North Carolina Department of the Secretary of State provides that the LLC was "formed on the 13th day of October, 1958, with its period of duration being Perpetual." *See* Ridley Decl., ¶¶14, 15, Ex. H, at 5. In 1958, Lowe's Investment Corporation filed its Articles of Incorporation with the North Carolina Secretary of State. *See* Ridley Decl., ¶16, Ex. I. North Carolina has maintained that

9

through several conversions and changes to business form, the currently named Home Centers, LLC, exists through the continuation of converting entities, including Home Centers, Inc.  Home Centers, LLC submitted the Certificate of Existence with its Application for Authority to the New York State Department of State, which the Department accepted when it issued Home Centers, LLC its Certificate of Authority.  *See* Ridley Decl., ¶14, Ex. H.

Finally, in May 2014, Companies, Inc. notified the New York State Department of Labor—the entity that issued the April 1999 Authorization permitting bi-weekly pay for manual workers—that "Lowe's Home Centers, Inc. . . . underwent a conversion to a Limited Liability Company under the laws of North Carolina," provided it with the Certificate of Authority, and advised that the New York State Department of Taxation was previously notified of the conversion.  *See* Ridley Decl., ¶17, Ex. J.

Though Home Centers, LLC maintains a different New York State Department of State identification number than Home Centers, Inc., this is a mere formality under the New York Limited Liability Company Law and has no bearing on Home Centers, Inc.'s continued existence as a limited liability company under North Carolina laws.  Home Centers, LLC filed its Application for Authority to do business as a limited liability company in New York, as required by Section 802 of the New York Limited Liability Company Law.  *See* Ridley Decl., ¶14, Ex. H; *see also* N.Y. Ltd. Liab. Co. Law § 802.  Notably, the Application for Authority states that the date of Home Centers, LLC's organization is October 13, 1958, and the Department of State accepted this representation.  *See* Ridley Decl., ¶¶14, Ex. H, at 3.  The latest New York State Department of State identification number was provided on the Certificate of Authority under Section 802 of the New York Limited Liability Company Law and resulted from the Application for Authority.  New York permits a foreign limited liability company to be granted authority to

10

do business in New York State, yet also permits continued governance by the law of its home jurisdiction as to its organization and internal affairs and the liability of its members and managers.  *See* N.Y. Ltd. Liab. Co. Law §§ 801, 805.

The State of North Carolina, the State of New York, and the United States federal government recognize Home Centers, Inc. and Home Centers, LLC as being the same.  This Court should, too.

### C. Plaintiff's Argument in the Parties' Joint Supplemental Pre-motion Conference Letter is Abrogated by the New York Limited Liability Company Law, Which Supports the Continued Validity of the Authorization

In the parties' joint supplemental pre-motion conference letter to the Court, Plaintiff advised the Court that Defendants previously sought to dismiss Companies, Inc.  *See* Dkt. No. 17, at 2.  In doing so, Plaintiff argues that by following Defendants previous logic, "a now defunct entity, or any entity related to Defendants cannot be held to be Plaintiff's employer." *See id*.  This argument misses the mark.

Defendants previously represented that Companies, Inc. does not conduct business in New York State and sought its dismissal.  Simply, Companies, Inc. does not have authority to conduct business in New York.  In making their request, Defendants, ironically, sought to avoid any corporate business form concerns, but did not seek to avoid any liability potentially attributed to Companies, Inc. as the wholly-owning entity of Home Centers, LLC.

Conveniently, Plaintiff fails to acknowledge that he declined to dismiss Companies, Inc. out of concern about whether Home Centers, LLC's revenues end up with Companies, Inc. Plaintiff relied on Companies, Inc.'s Form 10-K to argue there is no separation between the entities, yet now seems to abandon any concern because doing so would end his case.

11

**D.    The New York Labor Law Supports the Continued Validity of the Authorization**

That Home Centers, LLC continues to hold the Authorization is consistent with the body of law that forms the basis of Plaintiff's Amended Complaint.  Indeed, the Labor Law protects against separate entities escaping liability by mere virtue of their separateness.  For example, NYLL § 219, which governs violations of certain wage payment provisions, including Article 6 of the NYLL where NYLL §§ 191 and 195 are located (the provisions of the NYLL which Plaintiff's Amended Complaint is based), was amended in 2014 to further protect employees by treating employers that are substantially similar employers, under certain criteria, as the same employer.  The amended section provides in whole:

> ***An employer similar in operation and ownership to a prior employer found to be in violation of article six***, nineteen or nineteen-A of this chapter, ***shall be deemed the same employer for the purposes of this section if the employees of the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors***, or if the new entity has substantially the same production process, produces substantially the same products and has substantially the same body of customers.   Such a subsequent employer will continue to be subject to this section and shall be liable for the acts of the prior employer under this section.

NYLL § 219(4) (emphasis added); *see also* NYLL § 218(5) (providing a similar requirement for violations of certain other provisions).  The amendment is purposed "to provide that an employer similar in operation or ownership to a prior employer who has previously committed wage theft is liable for the acts of the prior employer for the purposes of orders directing payment of wages from the Commissioner of Labor or other decisions."  Mem. In Support, Bill Jacket, L. 2014, ch. 537, at 9.

Pursuant to the Labor Law, Home Centers, LLC would be subject to liability for Home Centers, Inc.'s wage violations.  According to North Carolina law, as one of the effects of the conversion, all Home Centers, Inc. employees naturally carried on their employment post-

12

conversion with Home Centers, LLC.  By operation of law, Home Centers, LLC acquired the responsibility to pay wages to Home Centers, Inc. employees, including New York employees.

Further, Plaintiff has taken issue with the fact that the Authorization is over twenty years old.  The Labor Law is devoid of any requirement that an employer renew its authorization to pay employees on a bi-weekly basis.  Furthermore, the Labor Law is devoid of any requirement providing that an existing business with an authorization to pay workers bi-weekly must seek a new authorization upon a change to its business form.  Yet, this is precisely Plaintiff's expectation.

Accordingly, North Carolina's conversion statutes, government records of Home Centers, Inc. and Home Centers, LLC, as well as the New York Limited Liability Company Law and New York Labor Law, each provide an individual basis for the Authorization to continue with Home Centers, LLC as an employer.  And together, the Authorization undoubtedly permits Home Centers, LLC to pay workers, including Plaintiff, bi-weekly, as their continued employer from Home Centers, Inc.  The Authorization requires dismissal of Plaintiff's First Cause of Action of the Amended Complaint.

**II.   The Labor Law Does Not Provide a Private Right of Action Under the Frequency of Payment Provision When Plaintiff Does Not Allege Unpaid Wages**

Assuming *arguendo* that Home Centers, LLC is not properly authorized to pay employees, including Plaintiff, bi-weekly—though it is—Plaintiff's claims must still fail.  In his Amended Complaint, Plaintiff does not seek actual damages in any amount of wages due and owing to him, as none exist, but instead seeks liquidated damages, attorneys' fees and costs, and prejudgment and post-judgment interest.  Am. Compl. ¶ 47, Dkt. No. 18.  Plaintiff does not allege that he was not paid properly for all hours worked and he does not contend that he has not received all wages to which he was entitled.  Without a claim for unpaid wages, Plaintiff's claim

fails as a matter of law because no private right of action exists for an untimely pay violation of NYLL § 191 when the allegation is not accompanied with a claim for unpaid wages.

A plain reading of NYLL § 191(1) demonstrates that there is no provision setting forth damages when an employer fails to timely compensate employees. Instead of relying exclusively on NYLL § 191(1) as a basis to bring this cause of action, Plaintiff seeks damages under NYLL § 198. Am. Compl. ¶ 47, Dkt. No. 18. Though Plaintiff does not identify which provision of NYLL § 198 he relies, Defendants presume Plaintiff is referring to NYLL § 198(1-a), as it is the only provision providing for liquidated damages. In any event, reliance on NYLL § 198 is improper. Section 198(1-a) of the Labor Law provides in relevant part:

> In any action instituted in the courts upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee to recover the full amount of ***any underpayment***, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer proves a good faith basis to believe that its ***underpayment of wages*** was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the ***total amount of the wages found to be due*** . . . .

NYLL § 198(1-a) (emphasis added). Thus, NYLL § 198 provides a remedy only if there is an "underpayment of wages."

To prevail, Plaintiff must allege and prove the existence of unpaid wages. Plaintiff does not allege he is owed wages. NYLL § 198 is designed to remedy an underpayment, as specifically and plainly written. An alleged late payment of wages is not an underpayment where, as here, the employer has paid all wages.

Based on the explicit statutory language of NYLL §§ 191(1) and 198(1-a), a recovery of liquidated damages, prejudgment interest, and attorneys' fees is recoverable *only* if there is an *underpayment* of wages. Neither provision, read separately or in conjunction, provides for a private right of action relating only to the frequency of payments. Some courts that have

14

addressed frequency of payment claims have noted that a plaintiff can recover only for unpaid wages.  *See, e.g., Mendez v. U.S. Nonwovens Corp.*, 2 F. Supp. 3d 442, 453 (E.D.N.Y. 2014) ("[I]f the employer fails to make timely payment, an employee can seek to recover unpaid or underpaid wages . . . ." (citations omitted)); *Yu Y. Ho v. Sim Enters., Inc.*, No. 11 Civ. 2855 (PKC), 2014 U.S. Dist. LEXIS 66408, at *34 (S.D.N.Y. May 14, 2014) ("Where wages are not timely paid, 'the court shall allow such employee to recover the full amount of any underpayment' of wages that the worker was entitled to earn. Thus, plaintiffs are entitled to recover the full amount of their unpaid wages . . . ." (quoting NYLL § 198(1-a))); *Cuzco v Orion Bldrs., Inc.*, No. 06 Civ 2789 (KMW) (WHK), 2010 U.S. Dist. LEXIS 51622, at *12 (S.D.N.Y. May 26, 2010) (concluding that plaintiffs prevailed on their late payment claim where plaintiffs also prevailed on their unpaid wages claims under the overtime, minimum wage, and spread-of-hours provisions of the NYLL).

Plaintiff has no private right of action through NYLL § 198 since he does not, and indeed cannot, allege an underpayment.  Courts in this District and other districts in New York agree.  In *Hussain v. Pakistan Int'l Airlines*, No. 11-CV-932, 2012 U.S. Dist. LEXIS 152254, at *8 (E.D.N.Y. Oct. 23, 2012), the court denied plaintiff's motion for summary judgment on his claim for unpaid wages and held "[t]he NYLL contains no provision for private suits for violations of its provisions regarding frequency of payment and recordkeeping."  Similarly, in *Arciello v. Cty. of Nassau*, No. 2:16-cv-3974, 2019 U.S. Dist. LEXIS 161167, at *22 (E.D.N.Y. Sept. 20, 2019), the court granted defendants' Rule 12(c) cross-motion for judgment on the pleadings as to plaintiff's NYLL § 191 claim.  The court explained that "the Second Circuit has not addressed whether NYLL § 198 provides a remedy for the failure to timely pay overtime wages. Courts in the Southern District of New York and this District have opined that the NYLL may not contain

such a remedy." *Id.*; *see also Belizaire v. RAV Investigative and Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 360 & n.22 (S.D.N.Y. 2014); *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565, 2018 U.S. Dist. LEXIS 54609, at *13 (E.D.N.Y. Mar. 29, 2018) (refusing to award liquidated damages for payments delayed two weeks or less and confirmed that "the NYLL's remedy section . . . seems to be geared to afford relief for unpaid wages, and not for late-paid wages") (citations omitted).

Additionally, New York State courts have similarly held that no private right of action exists absent an allegation of unpaid wages. *See Hunter v. Planned Bldg. Servs., Inc.*, No. 715053/2017, 2018 N.Y. Misc. LEXIS 2896, at *6 (N.Y. Sup. Ct. Queens Cty. June 11, 2018) (providing "the Court does not find a private right of action for violations of NYLL §191(1)(a)(i) where the plaintiff has not alleged unpaid wages exclusive of liquidated damages"); *Gardner v. D&D Elec. Constr. Co.*, No. 160249/2018, 2019 N.Y. Misc. LEXIS 4448, at *4 (N.Y. Sup. Ct., New York Cty, Aug. 7, 2019) (plaintiff "cannot bring an independent action to enforce the substantive provisions of the Labor Law because he was paid in full prior to the commencement of this action" and "[w]ithout any allegations of unpaid wages," claims for untimely wage payments cannot be sustained); *Phillips v. Max Finkelstein, Inc.*, 115 N.Y.S. 3d 866, 869 (N.Y. Sup. Ct. Suffolk Cty. 2019) (dismissing plaintiff's claim that defendants violated NYLL § 191 for failing to pay plaintiff on a weekly basis because no private right of action exists for a frequency of pay violation unless there was nonpayment of wages); *Kruty v. Max Finkelstein, Inc.*, No. 616616/2017, 2019 N.Y. Misc. LEXIS 6623, at *9 (N.Y. Sup. Ct. Suffolk Cty. Dec. 12, 2019) (concurring with the court in *Hunter* by stating that "actual payment of wages in full albeit on a bi-weekly basis where the law requires payment on a weekly basis does not constitute an

16

'underpayment' that would trigger an employee's right to commence a lawsuit to recover the damages set forth in that section of the Labor Law").

Though federal and state courts have ruled that delayed payment of wages is not an underpayment, the First Department in *Vega v. CM & Assoc. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (1st Dep't 2019) ignored the plain reading of NYLL § 198(1-a) and held otherwise.

A.   **This Court Should Not be Guided by *Vega v. CM & Assoc. Constr. Mgmt.* Nor *Scott v. Whole Foods Mkt. Grp., Inc.***

In *Vega*, the court held that NYLL § 198(1-a) expressly provides a private right of action for a pay frequency violation of Section 191 of the Labor Law because a late payment of wages is an "underpayment" of wages. *Id.* at 1145–46. *Vega* improperly construed the Labor Law and this Court should not follow its interpretation of NYLL § 198(1-a).

First, *Vega* is not binding on this Court, and instead is a lone intermediate court decision. This Court should not be guided by this single appellate division decision, especially as decisions among appellate divisions can be inconsistent and split on issues. *See, e.g., Mosquera v. Term Fulton Realty Corp.*, No. 157650/2016, 2018 N.Y. Misc. LEXIS 5624, at *15–16 (N.Y. Sup. Ct. New York Cty. Nov. 27, 2018) (recognizing a split between the Second Department and First Department regarding the definition of "supervisory control" in the labor law context).

Indeed, there is a Second Department decision that challenges *Vega*'s holding.  In *IKEA U.S. v. Industrial Bd. of Appeals*, 241 A.D.2d 454 (2nd Dep't 1997), the Second Department confirmed a determination of the Industrial Board of Appeals, which had confirmed a determination by the Commissioner that an employer violated NYLL § 191(1)(a) in not paying weekly wages.  The Commissioner did not find that the failure to timely pay wages was an underpayment and did not require payment of any amounts to the employees. *Id*. at 455.  This "leads to the inescapable conclusion that neither the Commissioner nor the court determined that

an underpayment under the facts presented had occurred." *Kruty*, 2019 N.Y. Misc. LEXIS 6623, at *8.

Courts within the Second Department have rejected *Vega* and instead have relied on *IKEA* to hold that no private right action exists for a frequency of pay violation unless there is a nonpayment of wages. *See Phillips*, 115 N.Y.S. 3d at 869; *Kruty*, 2019 N.Y. Misc. LEXIS 6623, at *7–8. Notably, Plaintiff is employed in Kings County, which is a Second Department county. If this Court is inclined to rely on any intermediate court decision, it should be guided by *IKEA*, not *Vega*.

Second, contrary to *Vega*, an underpayment does not include instances where an employer does not provide timely wage payments but pays all wages due before the commencement of an action. It is axiomatic that without a nonpayment, no underpayment exists. *Vega* simply relies on a definition of "underpayment" without consideration of surrounding language in Section 198. As discussed in greater detail *infra* Section II.B, NYLL § 198(1-a) speaks to the ability of an employee to recover "the full amount of any underpayment" plus "an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due." In a late-payment suit, at the time of the suit, there is no amount of wages that could be "found to be due," as they have already been paid. The significance of the surrounding language, including "additional" and "found to be due," suggest that an "underpayment" does not include delayed wage payments that have been paid.

This Court also should not be guided by *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18-cv-0086, 2019 U.S. Dist. LEXIS 61726, at *9–11 (E.D.N.Y. Apr. 9, 2019), *aff'd*, No. 18-cv-0086 (E.D.N.Y. Feb. 5, 2020), where the court erroneously implied a private right of action for alleged pay frequency violations by relying on the legislative purpose and scheme. This decision defies

18

other holdings of this Court.  *See Arciello v. Cty. of Nassau*, No. 2:16-cv-3974, 2019 U.S. Dist. LEXIS 161167 (E.D.N.Y. Sept. 20, 2019); *Coley v. Vannguard Urban Improvement Ass'n*, No. 12-CV-5565, 2018 U.S. Dist. LEXIS 54609 (E.D.N.Y. Mar. 29, 2018).  The *Scott* holding makes the conclusory leap that the legislature mistakenly omitted a private right of action in this provision despite the fact that no such private right is found in other key provisions of NYLL. This leap ignores that an "explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional." *Olmsted v. Pruco Life Ins. Co. of New Jersey*, 283 F.3d 429, 433 (2d Cir. 2002); *see also Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 72 (2013) ("when interpreting a statute, courts typically do not rely on legislative silence to infer significant alterations of existing law on the rationale that legislative bodies generally do not 'hide elephants in mouseholes'" (quoting *Whitman v. American Trucking Assns., Inc.*, 531 U.S. 457, 468 (2001))).

The Labor Law explicitly provides for private rights of action in certain provisions, while omitting such for others.  *Compare* NYLL §§ 195(1) and 195(3) *with* NYLL §§ 162, 195(4) and 195(5).  Section 191 is silent as to any private right of action, and though Section 198(1-a) provides such a right, it does not include delayed wages.  *Scott*'s holding drastically alters the landscape of the implications of pay frequency violations by reasoning that "[t]here is nothing in the statutory scheme authorizing the Commissioner to take action that suggests that a private action is barred or would otherwise run counter to the legislative scheme."  *Scott*, 2019 U.S. Dist. LEXIS 61726, at *11.  If the legislature intended the existence of a private right of action for pay frequency violations when there existed no unpaid wages, it would have said so, as it did with other provisions.  Though, the Court need not reach the legislature's intent, as plain readings of

19

Section 198(1-a) and 191 of the Labor Law provide specific methods and types of recovery, without the inclusion of recovery through a private right of action when no unpaid wages exist.

A delay in wages that are not due is not a failure to pay wages, and as such, Section 218, not Section 198, of the Labor Law provides for proper remedy.  NYLL § 218(1) provides "[w]here the violation is for a reason other than the employer's failure to pay wages, benefits or wage supplements found to be due, the [Commissioner's] order shall direct payment to the commissioner of a civil penalty."  Section 191 of the Labor Law is subject to enforcement by the Department of Labor, which is specifically tasked by statute with its enforcement.  The discretion as to how to penalize any employer for a timing violation resides with the Commissioner.  The Commissioner's authority to penalize an employer who violates the timely pay requirements of NYLL § 191 ensures that employers do not flout the requirements without repercussions.

### B.   Liquidated Damages are Inapplicable and Unconstitutional For Untimely Wage Violations Where No Wages Remain Unpaid

Though NYLL § 198(1-a) liquidated damages are available for *unpaid* wages, the imposition of liquidated damages for untimely wages that have been paid is improper because they are not underpayments.  Section 198 "by its express terms, . . . limits an award of liquidated damages to unpaid wages."  *Java v. El Aguila Bar Rest. Corp.*, No. 16-CV-6691 (JLC), 2018 U.S. Dist. LEXIS 69790, at *32, n.18 (S.D.N.Y. Apr. 25, 2018).  NYLL § 198(1-a) provides for recovery of "an ***additional*** amount as liquidated damages equal to one hundred percent of the total amount of wages ***found to be due***."  (emphasis added).  There is no dispute that no wages are "due" to Plaintiff as of the date of this action.  Without wages found to be due, the liquidated damages provision cannot be implicated.  As other district courts have explained, NYLL § 198(1-a) is "geared to afford relief for unpaid wages, not for late-paid wages."  *Coley*, 2018 U.S.

20

Dist. LEXIS 54609, at *42 (quoting *Belizaire*, 61 F. Supp. 3d at 360, n.22).  Section 198(1-a) liquidated damages apply to provide "additional" damages, not the *only* damages.  Section 198 explicitly provides "an additional amount as liquidated damages," and it follows that there must be a prior recovery to have an "additional" imposition.  Here, there is nothing to which the Court may provide additional damages, as Plaintiff is without due wages.  One-hundred percent of zero is zero.

If the Court determines that delayed wages are underpayments—and it should not— awarding one-hundred percent of the total amount of wages due when no wages are due is an extreme penalty for late payment of wages pursuant to NYLL § 198 and it violates the New York Constitution.  Liquidated damages in the amount of all late payments are excessive in proportion to the harm that any employee has suffered.  Plaintiff, as with others, was paid his wages earned with a slight delay, which could only amount to a *de minimus* amount of interest. Yet, liquidated damages under Section 198 seek to provide employees with a year's salary—26 weeks of delayed wages plus an additional 26 weeks for liquidated damages.  This is not compensatory, but punitive.  The constitutional limits on punitive damages are well established and when applied to damages which were merely paid late, the liquidated damages provision under NYLL § 198 well exceeds these limits.  "The Supreme Court has 'concluded that [a punitive damages] award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety.'" *Thomas v. iStar Financial, Inc.*, 652 F.3d 141, 149 (2d Cir. 2010) (discussing a 1:5.7 ratio) (quoting *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).  In all cases, "courts must ensure that the measure of the punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered."  *State Farm*, 538 U.S. at 426.  Here, if a delayed payment is considered an

underpayment, then Plaintiff seeks to recover the delayed wages plus an additional one-hundred percent of those delayed wages, although they were only delayed by one week.  An imposition of liquidated damages that far exceeds the damages felt by Plaintiff goes beyond the deterrence effect of punitive damages.

### C. Liquidated Damages Do Not Apply in this Action Because Defendants Acted in Good Faith

If this Court is inclined to find that (1) a delay in wages without outstanding unpaid wages is an underpayment and (2) liquidated damages is an available remedy—and the Court should not make either of these findings—Plaintiff still remains without recourse.  Section 198(1-a) of the Labor Law provides for liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  Here, Plaintiff seeks liquidated damages only, and therefore relies on Defendants not having a good faith basis for their pay practice.  Defendants had a good faith basis to believe the payments of wages was in compliance with the law.

The Labor Law looks to the Fair Labor Standards Act ("FLSA") for guidance as to a "good faith basis." "To establish the requisite subjective 'good faith,' an employer must show that it took active steps to ascertain the dictates of the FLSA and then act to comply with them." *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (internal quotation marks and citations omitted).  "[C]ourts have not substantively distinguished the federal standard from the current state standard of good faith."  *Inclan v. New York Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015).  Defendants satisfy this standard.

As explained in great detail *supra* Section I, the Authorization provided to Home Centers, Inc. in 1999 continued with Home Centers, LLC, and North Carolina and New York laws each provide support that the Authorization remains valid for Home Centers, LLC.  Though, if the

Court disagrees with the validity of the Authorization for Home Centers, LLC—and it should not—the Court must find that Defendants in good faith relied on the validity of the Authorization and determine that Plaintiff may not recover liquidated damages, which leaves Plaintiff without any possible form of recovery.  The manner in which North Carolina and New York government agencies treat the conversion support Defendants' good faith basis to rely on the Authorization and to continue to pay employees bi-weekly, like it had done for fourteen years prior to the conversion.  Further, the Labor Law is devoid of any requirement for an employer to renew an authorization or apply for an authorization upon a change in business form.  Defendants previously sought and obtained the Authorization, and advised the New York State Department of Labor of the conversion, which are active steps to ascertain and comply with the dictates of the NYLL.  Liquidated damages are not available for Plaintiff as Defendants acted in good faith.

Accordingly, because it is clear that a private right of action for an alleged violation of Section 191 of the Labor Law exists only where there has been an underpayment of wages, that a delayed payment in wages without unpaid wages is not an underpayment, that Plaintiff does not allege that he is owed any unpaid wages, that liquidated damages are only available in addition to wages due, and that Defendants had a good faith basis to rely on the Authorization to pay workers bi-weekly, the Court should dismiss Plaintiff's First Cause of Action of the Amended Complaint.

### III.   Defendants Issued Proper and Accurate Wage Statements in Compliance with the Labor Law

In Plaintiff's Second Cause of Action, Plaintiff asserts that Defendants violated NYLL § 195(3) by not showing "hours worked per week" on wage statements.  Am. Compl. ¶ 50, Dkt. No. 18.  Plaintiff's NYLL § 195(3) wage statement claim must be dismissed because Defendants

23

complied with their obligation under the Labor Law to provide wage statements containing the required information with every payment of wages.

Pursuant to NYLL § 195(3) an employer must furnish its employees with a wage statement with every payment of wages, and that statement must contain the following:

> the dates of work covered by that payment of wages; name of employee  name of employer;  address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. . . . the regular hourly rate or rates of pay;  the overtime rate or rates of pay;  the number of regular hours worked, and the number of overtime hours worked.

NYLL § 195(3).

A review of Plaintiff's wage statements reveals that Defendants complied with NYLL § 195(3).  Am. Compl., Ex. A, Dkt. No. 18-1.  First, Defendants are authorized to pay Plaintiff bi-weekly.  Thus furnishing bi-weekly wage statements that provide for the hours worked during the pay period satisfies NYLL § 195(3)'s requirement.  Second, contrary to Plaintiff's claims, NYLL § 195(3) does not require wage statements to show "hours worked per week."  *See Hunter v. Planned Bldg. Servs., Inc.*, No. 715053/2017, 2018 N.Y. Misc. LEXIS 2896, at *8–9 (N.Y. Sup. Ct. Queens Cty. June 11, 2018) ("While defendant failed to provide wage statement on a weekly basis, the statute only requires that wage statements be furnished to employees with every payment of wages and provide specific information.").  Rather, the Labor Law only requires "the number of regular hours worked, and the number of overtime hours worked," NYLL § 195(3), which Defendants include in every wage statement,  *see* Ridley Decl., ¶18; *see also* Am. Compl., Ex. A, Dkt. No. 18-1.  Plaintiff does not, and cannot, identify any element that is required to appear on a wage statement but does not.  Accordingly, Plaintiff cannot sustain his Second Cause of Action and it must be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above, pursuant to Federal Rule of Civil Procedure 12(b)(6),

Defendants respectfully request that the Court dismiss all claims against Defendants with

prejudice.  Defendants also respectfully request that the Court grant Defendants their attorneys'

fees and costs as well as such other and/or further relief as the Court may deem just and proper.

SEYFARTH SHAW LLP
Attorneys for Defendants


By: */s/ Howard M. Wexler*
Lynn A. Kappelman
Howard M. Wexler
620 Eighth Avenue, 32nd Floor
New York, New York 10018
Telephone: (212) 218-5500
lkappelman@seyfarth.com
hwexler@seyfarth.com


Dated:  July 17, 2020

25