**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SERGE RODRIGUE, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | **No.: 20 Civ. 01127 (RPK)(RLM)** |
| **-against-** | |
| **LOWE'S HOME CENTERS, LLC, and LOWE'S COMPANIES, INC.,** | |
| **Defendants.** | |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
28 Liberty Street
New York, New York 10005
Telephone: (212) 300-0375

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD .............................................................................................................. 2

ARGUMENT ............................................................................................................................ 3

   I.   DEFENDANTS' CLAIM THAT THEY ARE EXEMPT FROM THE
REQUIREMENTS OF NYLL § 191(a)(1) IS AN INAPPROPRIATE MERITS
ARGUMENT BASED ON MATERIALS THE COURT SHOULD NOT CONSIDER. ... 3

     A.   The Court Should Not Take Judicial Notice of Defendants' Exemption Letter ...... 4

     B.   The Declaration of Grace Ridley and Supporting Exhibits Should Not Be
Considered by the Court ........................................................................................ 7

     C.   Extrinsic Documents Do Not Prove Defendants are Exempt From NYLL § 191
Even If They Are Considered By The Court ................................................... 8

   II.   NYLL § 191 PROVIDES FOR A PRIVATE RIGHT OF ACTION ...................... 12

     A.   The First Department's Ruling in Vega Controls This Action ............................... 13

     B.   The Weight of Authority Supports A Private Right of Action ............................... 15

   III.   LIQUIDATED DAMAGES AS PROVIDED FOR IN THE NYLL ARE
CONSTITUTIONAL AND APPLICABLE TO THIS MATTER ...................................... 18

   IV.   DEFENDANTS' WAGE STATEMENTS VIOLATE NYLL § 195(3) .................. 21

CONCLUSION ........................................................................................................................ 22

# TABLE OF AUTHORITIES

CASES

*AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6
(2d Dept. 2008) ------------------------------------------------------------------------------------------14

*Arciello v. County of Nassau*, No. 16 Civ. 3974, 2019 WL 4575145
(E.D.N.Y. Sept. 20, 2019)---------------------------------------------------------------------------------16

*Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132
(2d Cir. 2008) ---------------------------------------------------------------------------------------------19

*Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d, 336
(S.D.N.Y. 2014) -------------------------------------------------------------------------------------------16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)--------------------------------------------------------------------------------------- 2

*Campos v. Aegis Realty Management Corp.*, No. 19 Civ. 2856 (KPF), 2020 WL 433356
(S.D.N.Y. Jan. 28, 2020) --------------------------------------------------------------------------------- 2

*Chambers v. Time Warner, Inc.*, 282 F. 3d 147
(2d Cir. 2002) --------------------------------------------------------------------------------------------- 2, 6

*Coley v. Vanguard*, No. 12 Civ. 5565 (PKC)(RER), No. 12 Civ. 5565, 2018 WL 1513628
(E.D.N.Y. Mar. 29, 2018) --------------------------------------------------------------------------------16

*Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460
(E.D.N.Y. 2015) -------------------------------------------------------------------------------------------21

*Cuzco v. Orion Builders, Inc.*, No. 06 Civ. 2789 (KMW)(THK), 2010 WL 2143662
(S.D.N.Y. May 26, 2010) ------------------------------------------------------------------------- 14, 15

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54
(S.D.N.Y. 2010) ------------------------------------------------------------------------------------------ 6

*DiBella v. Hopkins,* 403 F.3d 102
(2d Cir. 2005) -------------------------------------------------------------------------------------- 13, 17

*Duverny v. Hercules Medical P.C.*, No. 18 Civ. 7652 (DLC), 2020 WL 1033048
(S.D.N.Y. Mar. 3, 2020)----------------------------------------------------------------------------------15

*Faulkner v. Beer*, 463 F.3d 130
(2d Cir.2006) --------------------------------------------------------------------------------------------- 6

iii

*Gamero v. Koodo Sushi Corp*., 272 F. Supp 3d 481
(S.D.N.Y. 2017) --------------------------------------------------------------------------------20

*Gardener v. DND Elec. Const. Co. Inc.*, No. 160249/2018, 2019 N.Y. Slip Op. 32389(U)
(N.Y. Sup. Ct. Aug. 7, 2019) ------------------------------------------------------------------17

*Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150
(2d Cir.2006) --------------------------------------------------------------------------- 2, 3, 6, 7

*Goel v. Bunge, LTD.*, 820 F. 3d 554
(2d Cir 2016) ----------------------------------------------------------------------------------- 2

*Hayden v. Cnty. of Nassau*, 180 F.3d 42
(2d Cir.1999) --------------------------------------------------------------------------------22

*Hernan v. RSR Security Services, Ltd.*, 172 F. 3d 132
(2d Cir. 1999) -------------------------------------------------------------------------------19

*Hicks v. T.L. Cannon Management Corp.*, No 13 Civ. 06455 (EAW), 2018 WL 2440732
(W.D.N.Y. Mar. 13, 2018) --------------------------------------------------------------------21

*Hinterberger v. Catholic Health,* No. 08 Civ. 380S, 2009 WL 4042718
(W.D.N.Y. Nov. 19, 2009)---------------------------------------------------------------------18

*Hunter v. Planned Bldg. Services, Inc.*, No. 715053/0217, 2018 N.Y. Slip Op. 31541
(N.Y. Sup. Ct. 2018) --------------------------------------------------------------------------xx

*Hussain v. Pakistan International Airlines, Corp.*, No. 11 Civ. 932 (ERK)(VVP),
2012 WL 5289541 (E.D.N.Y. Oct. 23, 2012) ---------------------------------------------17

*Ikea U.S., Inc. v. Idustrial Baord of* Appeals, 241 A.D. 2d 454
(2d Dept. 1997) --------------------------------------------------------------------------- 13, 14

*Imbarrato v. Banta Management Services, Inc.*, No. 18 Civ. 5422, 2020 WL 1330744
(S.D.N.Y. Mar. 20, 2020) --------------------------------------------------------------------21

*In re Zypreza Prods. Liability Litig.*, 549 F. Supp. 2d 496
(E.D.N.Y. 2008) ------------------------------------------------------------------------------ 5

*Intellivision v. Microsoft Corp.*, 484 Fed. Appx. 616
(2d Cir. 2012) -------------------------------------------------------------------------------11

*International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 143 F 3d 66
(2d Cir. 1998) ------------------------------------------------------------------------------ 3

*Kruty v. Max Finkelstein*, No. 616616-2017
(Suffolk Cnty. Ct. Dec. 12, 2019)-------------------------------------------------- 12, 14

*Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390
(E.D.N.Y. 2015) -------------------------------------------------------------------15

*Lum v. Bank of America*, 361 F.3d 217
(3d Cir.2004) --------------------------------------------------------------------- 3

*Lumplkin v. Brehm,* 230 F. Supp 3d. 178
(S.D.N.Y. 2017) ------------------------------------------------------------------- 7

*Mendez v. US Nonwovens Corp*, 2 F. Supp. 3d 442
(E.D.N.Y. 2014) ------------------------------------------------------------------18

*Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348
(W.D.N.Y. 2001) ------------------------------------------------------------------ 4

*Murphy v. Gibbons*, No. 13 Civ. 1433 (GLS)(RFT), 2014 WL 4828126
(N.D.N.Y. Sept. 29, 2014) --------------------------------------------------------- 4

*New Greenwich Litigation Trustee, LLC v. Citco Fund Services (Europe) B.V.*, 145 A.D. 3d 16,
(1st Dept. 2016)------------------------------------------------------------------- 9

*New Hampshire v. Maine,* 532 U.S. 742
(2001) ---------------------------------------------------------------------------11

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572
(1942) ---------------------------------------------------------------------------19

*Penn v. New York Methodist Hosp.*, No. 11 Civ. 9137 (NSR), 2013 WL 5477600
(Sept. 30, 2013)------------------------------------------------------------------- 2

*People v. Vetri,* 309 N.Y. 401
(1955) ---------------------------------------------------------------------------13

*Phillips v. Max Finkelstein*, 115 N.Y.S.3d 866
(Suffolk Cnty. Ct. Dec. 12, 2019).------------------------------------------------- 12, 14

*Rana v. Islam*, 887 F. 3d 118
(2d Cir. 2018) --------------------------------------------------------------------19

*Rojas v Hi-Tech Metals, Inc.*, No. 702847/2019, 2019 WL 4570161
(N.Y. Sup. Ct. Sept. 11, 2019)-----------------------------------------------------15

*Sarit v. Westside Tomato, Inc.*, No. 18 Civ. 11524 (RA), 2020 WL 1891983,
(S.D.N.Y. Apr. 16, 2020) --------------------------------------------------------------------15

*Scott v. Whole Foods Market Group, Inc.*, No. 18 Civ. 86 (SJF)(AKT), 2019 WL 1559424
(S.D.N.Y. Apr. 9, 2019) --------------------------------------------------------------------15

*Scott v. Whole Foods Market Group, Inc.*, No. 18 Civ. 86 (SJF)(AKT), ECF Doc. No. 58,
(E.D.N.Y. Feb. 5, 2020) --------------------------------------------------------------------15

*Seymore Gottlieb v. Kenneth D. Laub & Company, Inc.*, 82 N.Y. 2d 457
(1993) ----------------------------------------------------------------------------------------15

*Sierra Club v. Con-Strux LLC*, 911 F.3d 85
(2d Cir. 2018) -----------------------------------------------------------------------------  2

*Sira v. Morton*, 380 F. 3d 57,
(2d Cir. 2004) -----------------------------------------------------------------------------  6

*Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2011 WL 446144,
(S.D.N.Y. Feb. 7, 2011) --------------------------------------------------------------------20

*Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management*, 843 F.3d 561,
(2d Cir. 2016) -----------------------------------------------------------------------------  2

*Tyco Int'l, Ltd. v. Kozlowski,* 756 F. Supp. 2d 553
(S.D.N.Y. 2010) ---------------------------------------------------------------------------  9

*Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426
(E.D.N.Y. 2015) ---------------------------------------------------------------------------  5

*Vega v. CM & Assoc. Constr. Mgmt., LLC. See* 175 A.D. 1144
(1st Dept. 2019) ------------------------------------------------------------------ passim

*Wang Kwong Ho v. Target Construction of NY Corp.*, No. 08 Civ. 4750 (KAM)(RER),
2011 WL 1131510 (E.D.N.Y. Mar. 28, 2011) --------------------------------------------15

*West v. Am. Tel. & Tel. Co.,* 311 U.S. 223
(1940) ----------------------------------------------------------------------------------------13

*Yu Y. Ho v. SIM Enterprises, Inc.*, No. 11 Civ. 2855 (PKC), 2014 WL 1998237
(S.D.N.Y. May 14, 2014) ------------------------------------------------------------------18

<u>STATUTES</u>

N.C. Gen. Stat. § 57D-9-23(a)-------------------------------------------------------------------------9, 10

Fed. R. Civ. P. 15(a)(2)--------------------------------------------------------------------------------22

Fed. R. Evid. § 201(b) ------------------------------------------------------------------------------- 3

N.Y. Bus. Corp. Law § 1301 --------------------------------------------------------------------- 9

N.Y. Bus. Corp. Law § 1302 --------------------------------------------------------------------- 9

NYLL § 191(1)(a)------------------------------------------------------------------------------ passim

NYLL § 195(3) -------------------------------------------------------------------------------- passim

NYLL § 219-------------------------------------------------------------------------------------10

## PRELIMINARY STATEMENT

Plaintiff's complaint alleges that Lowe's Home Centers, LLC and Lowe's Companies, Inc. ("Lowe's" or "Defendants") unlawfully paid Plaintiff and similarly situated customer service associates, specialists, stockers, and other similar manual workers ("Manual Workers") on an untimely basis and failed to provided them with accurate wage statements according to New York Labor Law ("NYLL") §§ 191(1)(a), 195(3). *See* ECF No. 18 ("Am. Compl.") ¶¶ 1, 4-6, 38-42. Now, Defendants move to dismiss Plaintiff's claims by arguing that they are exempt from the New York Labor Law's frequency of payment laws, that there is no private right of action under NYLL § 191(1)(a), that the NYLL's liquidated damages provisions are unconscionable, and that their wage statements do not violate NYLL § 195(3). *See* ECF No. 20-5.

Defendants' argument that they are exempt from the NYLL is an inappropriate argument which relies on material that may not be considered at this stage of litigation. Furthermore, even if the Court was to consider this argument, it should find that Defendants are not exempt from NYLL § 191(1)(a)'s requirements, as it is clear that they do not hold the necessary exemption from the New York Department of Labor ("NYDOL"). Second, Defendants' argument that NYLL § 191 does not provide for a private right of action misses the mark entirely. The weight of authority overwhelmingly supports that NYLL § 191 provides for a private right of action. Moreover, Defendants' argument that the liquidated damages provisions of the NYLL are unconstitutional ignores that these damages are compensatory, and are regularly awarded within the Second Circuit. Finally, Defendants' wage statements do not comply with the requirements of NYLL 195(3) as they lead to the exact type of confusion that the legislature intended to combat when they drafted NYLL § 195.

1

As clearly set-out below, all of Defendants' arguments fail. Plaintiff respectfully requests that the Court deny Defendants' motion in its entirety.

## **LEGAL STANDARD**

When evaluating a defendant's motion to dismiss under Rule 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Sierra Club v. Con-Strux LLC*, 911 F.3d 85, 88 (2d Cir. 2018) (citing *Trustees of Upstate New York Engineers Pension Fund v. Ivy Asset Management*, 843 F.3d 561, 566 (2d Cir. 2016)). To survive a 12(b)(6) motion, a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Campos v. Aegis Realty Management Corp.*, No. 19 Civ. 2856 (KPF), 2020 WL 433356, at *3 (S.D.N.Y. Jan. 28, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Furthermore, a motion to dismiss under Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint" and must rely on a "narrow universe of materials". *See Goel v. Bunge, LTD.*, 820 F. 3d 554, 558 (2d Cir 2016) (citing *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir.2006)). In this regard, a problem "arises when a party seeks to introduce affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion." *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). When a Rule 12(b)(6) motion presents matters outside the pleadings, the court is afforded two options, to exclude the extrinsic documents, or to convert the motion to one for summary judgement and allow the parties to conduct appropriate discovery. *See Chambers v. Time Warner, Inc.*, 282 F. 3d 147, 154-155 (2d Cir. 2002). This is a "mandatory rule" which ensures fairness to a plaintiff and makes sure the plaintiff will "have an opportunity to

contest defendants' relied-upon evidence by submitting material that controverts it." *See Global Network Communications, Inc.*, 458 F. 3d at 155 (internal citations omitted).

The only exception to this bright line rule is that a court may also consider "materials integral to the complaint," meaning materials the plaintiff "relied on" in drafting the complaint, or "materials subject to judicial notice." *Id.* Materials subject to judicial notice include matters of public record, however these records are not to be used for the "truth of the facts asserted." *Id.* (citing *Lum v. Bank of America*, 361 F.3d 217, 222 n. 3 (3d Cir.2004)). Furthermore, judicial notice may only be taken of facts "that are 'not subject to reasonable dispute.'" *See International Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 143 F 3d 66, at 70 (2d Cir. 1998) (quoting Fed. R. Evid. § 201(b).

**ARGUMENT**

**I. DEFENDANTS' CLAIM THAT THEY ARE EXEMPT FROM THE REQUIREMENTS OF NYLL § 191(a)(1) IS AN INAPPROPRIATE MERITS ARGUMENT BASED ON MATERIALS THE COURT SHOULD NOT CONSIDER.**

In lieu of addressing Plaintiffs' well-plead allegations under the appropriate Rule 12(b)(6) standard, Defendants resort to attaching a litany of documents to their opposition to make factual merits-based arguments for dismissal. However, the Court should not consider any of the exhibits attached to their motion to dismiss, including the exemption letter that is a focal point to their argument.  Simply put, Plaintiff needs discovery to effectively counter the new facts presented by these documents, which were not material to Plaintiff's complaint, and are not public record. Furthermore, should the Court find that it can take judicial notice of these extrinsic documents, the Court should still find that Defendants are not exempt from the requirements of NYLL §191(1)(a).

**A.  The Court Should Not Take Judicial Notice of Defendants' Exemption Letter**

Defendants' first argument asks the Court to take judicial notice of the purported exemption letter and consider it when ruling on the current motion. *See* ECF No. 20-5, pgs. 3-4. However, this letter does not match the requirements necessary for judicial notice, as it is not a matter of public record and is being submitted for the truth of the matter asserted. Furthermore, the letter in question is not material that is integral to the complaint.

i.   The Exemption Letter is not a matter of public record.

First, the Court may only take judicial notice of documents not attached to the complaint if they are public record. *See Murphy v. Gibbons*, No. 13 Civ. 1433 (GLS)(RFT), 2014 WL 4828126 (N.D.N.Y. Sept. 29, 2014) (denying to afford judicial notice of documents which "are clearly not public records"). The definition of public record for the purpose of a Rule 12(b)(6) motion is limited to "statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action." *See Moore U.S.A.*, *Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) (collecting cases) (declining to take judicial notice of pages from a website, because they were not public record).

Here, the purported exemption letter is clearly not a public record because it does not fall into any of the categories mentioned above. Plaintiff would have no way to access the letter provided by Defendants in any public forum.[1] Moreover, Defendants admit they did not find this letter in their own records until May 20, 2020, a full 82 days after this action was filed and 70 days after Defendants were served. *See* ECF No. 17 ("[o]n May 20, 2020 Defendants located a copy of

---

[1] Plaintiff does have an outstanding FOIL Request sent to the New York Department of Labor, however even if this letter was responsive to such a request, it would likely not have been produced according to this request because it does not concern either Named Defendant. In any event, that request was made on February 28, 2020 and is still pending.

their authorization from April 1999 allowing wage payments to be made to manual workers on a bi-weekly basis"). This letter is simply a private correspondence between The New York Department of Labor and a corporation, to which no public status can be attributed.

Defendants only cite two cases to argue that this document is a public record, neither of which are applicable to the facts at hand. First, Defendants turn to *In re Zypreza Prods. Liability Litig.* to argue that public documents issued by government agencies such as the Food and Drug Administration ("FDA") may be judicially noticed. *See* ECF No. 20-5, pg. 11; 549 F. Supp. 2d 496 (E.D.N.Y. 2008). Plaintiff does not dispute that the court may, at its discretion, take judicial notice of public documents issued by government agencies. However, FDA Guidance Letters, in contrast to the letter at issue here, are easily accessible documents available on FDA's website.[2] Furthermore, the Court in *Zyprexa* found that it did not need to use the documents it took judicial notice of to reach its ruling, as if "such judicial notice not taken the court's rulings would be unchanged." *See* 549 F. Supp. at 531. Moreover, the *Zyprexa* court found that matters outside the pleadings had been presented and converted the 12(b)(6) motion at hand to a motion for summary judgment, for which discovery was permitted. *See id.* Accordingly, *Zyprexa* is not helpful to Defendants.

Similar to *Zyprexa*, the court in *Vale v. Great Neck Water Pollution Control Dist.* took judicial notice of a decision of the New York State Division of Human Rights ("NYSDHR") by finding that such a decision was public record. *See* 80 F. Supp. 3d 426, 433 (E.D.N.Y. 2015). Again, these decisions are publicly available, both online[3] and at NYSDHR offices.[4] Furthermore,

---

[2] *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents
[3] *See* https://dhr.ny.gov/court-orders
[4] *See* https://dhr.ny.gov/foil

a plaintiff would obviously have a record of these decisions in their possession. This conflicts with the letter in question here, which is not readily available to any member of the public nor Plaintiff.

ii.  The Exemption Letter is not integral to the complaint.

"To be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'" *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153); *see also Global Network Communications, Inc.*, 458 F. 3d at 156 (materials must be relied upon in drafting of complaint to be integral). Notably, "'mere notice or possession is not enough' for a court to treat an extraneous document as integral to a complaint; the complaint must 'rely heavily upon the document's terms and effect' for that document to be integral. *Id.* (quoting *Chambers*, 282 F.3d at 153). Even if reliance and notice requirements are met, courts still do not consider extrinsic materials where there is a dispute "regarding the authenticity or accuracy of the document" or "the relevance of the document" to the dispute. *Id.* (citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir.2006)).

The exemption letter does not meet the integral requirements. Here, Plaintiff was unaware of the existence of the purported exemption letter when drafting his initial complaint. Therefore, Plaintiff could not have relied upon the document in framing the complaint. Moreover, the only changes made to the Amended Complaint referenced Plaintiff's claims under NYLL § 195(3). The Amended Complaint never references any exemption or letter. *See generally* Am. Compl. In this regard, the only case cited by Defendants to support their argument, *Sira v. Morton*, is inapplicable, as the Second Circuit found in *Sira* that documents which the plaintiff *specifically cited* in his complaint were integral to the complaint. 380 F. 3d 57, 67 (2d Cir. 2004). Furthermore, *Sira* was converted to a motion for summary judgment because of the inclusion of documents that were not

6

integral to the complaint, and was therefore judged on a different standard than the instant action. *Id.* As such, Defendants' purported exemption letter should not be considered by the Court at this time.

### B. The Declaration of Grace Ridley and Supporting Exhibits Should Not Be Considered by the Court

Defendants also seek for the Court to take judicial notice of the declaration of Grace Ridley ("Ridley Dec.") and its attached exhibits. *See* ECF No. 20-5, pg. 4. This declaration does not fit into any of the defined judicial notice exceptions. First, it is clearly not a public document, as it was created solely for the purposes of Defendants' motion. Obviously, Plaintiff could not have relied on it as material integral to his complaint. Any component of Defendants' motion that relies on this declaration and its attached exhibits should be ignored. *See Lumplkin v. Brehm,* 230 F. Supp 3d. 178, 183 (S.D.N.Y. 2017) (refusing to acknowledge defendants' brief due its heavy reliance on a declaration and exhibits it could not consider during a 12(b)(6) motion).

In fact, Defendants' attached exhibits and declaration are the exact type of evidence that would be unfair to include in a 12(b)(6) motion. *See Global Network Communications, Inc.*, 458 F. 3d at 155 (finding that including "facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence" in a 12(b)(6) motion causes a "major problem" which includes "the lack of notice to the plaintiff that outside matters would be examined"). This is for good reason; Plaintiff is thoroughly unable to counter the declarant's claims without full discovery on this matter. *See id.* ("plaintiff will have an opportunity to contest defendant's relied-upon evidence [only] by submitting material that controverts it"). For example, Exhibit J to the Ridley Dec. is a letter from Lowe's Companies, Inc. to the NYDOL that purports to notify the department of the conversion of Lowe's Home Centers, Inc. ("LHCI") to Lowe's Home Centers, LLC. *See* ECF No. 20-4. However, without further information, Plaintiff cannot

know if there was any further correspondence with the NYDOL regarding the effect of this on any privileges or exemptions Defendants may have held. In fact, Plaintiff is unable to determine whether Lowe's holds any further documents which may shed light on this issue, including whether the NYDOL ever revoked the exemption granted to LHCI, or what Defendants' own internal analysis on the effects of their purported conversion would have with regards to the NYLL. Moreover, Plaintiff is unable to ascertain why Defendants have previously stated that Lowe's Home Centers, Inc. "does not exist" and is not an employer of plaintiffs in separate litigations. *See* Defendants' Separate Litigation Filings, attached hereto as **Exhibit ("Ex.") A**. Instead, it appears Defendants would like Plaintiff to only have access to the information which paints their argument in the most favorable light. As stated by *Global Network Communications, Inc.*, the Court should not allow these documents to impact its ruling on this Motion, as it would be substantially unfair to Plaintiff.

### C.  Extrinsic Documents Do Not Prove Defendants are Exempt From NYLL § 191 Even If They Are Considered By The Court

Even if the Court finds that it may grant judicial notice to any or all of Defendants' documents, it is still clear that these documents do not exempt Defendants from the timely wage requirement of NYLL § 191(1)(a). Defendants devote a significant portion of their motion arguing that North Carolina corporate laws apply and that LHCI, by virtue of its purported conversion to Lowe's Home Centers LLC, maintained its exemption as an *asset* which carried over through the conversion. This argument misses the mark, as this is not a question of internal affairs, but of the labor laws of New York, specifically the NYDOL's granting of an exemption to an employer. Furthermore, the exemption applies specifically to the employer, and Plaintiff was never employed by LHCI. *See* ECF No. 18-1. Finally, Defendants should be judicially estopped from arguing that

Lowe's Home Centers, LLC would be liable for wage violations of LHCI or that LHCI constitutes Plaintiff's employer.

First, as Defendants point out, North Carolina Law mandates that upon conversion to an LLC, the converting entity ceases its prior form of organization and continues as a new surviving entity. *See* N.C. Gen. Stat. § 57D-9-23(a). However, this is where the applicability of North Carolina Law ends because this case is not a question of Defendants' internal affairs, rather, it is whether Defendants hold an exemption granted by New York's Commissioner of Labor. *See New Greenwich Litigation Trustee, LLC v. Citco Fund Services (Europe) B.V.*, 145 A.D. 3d 16, 22 (1st Dept. 2016) (internal citation omitted) (refusing to apply the internal affairs doctrine because it has "very few specific applications" which are limited to matters concerning "relationships *inter se* of the corporation, its directors, officers and shareholders"); *see also Tyco Int'l, Ltd. v. Kozlowski,* 756 F. Supp. 2d 553, 560 (S.D.N.Y. 2010) (internal quotation omitted) ("New York takes a much narrower view of the internal affairs doctrine than do some other jurisdictions . . . [i]n New York the internal affairs doctrine is applied only as one factor in an analysis where the law of the state with the greatest interest in the issue governs.").

Key to this inquiry is New York's Business Corporation Law, Article 13 – Foreign Corporations. This act mandates that a foreign corporation shall not do business in New York until it has been authorized to do so. *See* N.Y. Bus. Corp. Law § 1301. Once a corporation is authorized to do business in New York, its authority remains until it surrenders that authority. *See* N.Y. Bus. Corp. Law § 1310. To surrender this authority a corporation must file a certificate of surrender according to N.Y. Bus. Corp. Law §1310. Upon the surrender of authorization, the corporation is no longer authorized to do business in the state. *See* N.Y. Bus. Corp. Law § 1302.

9

Here, it is clear that under North Carolina Law, Defendant Lowe's Home Centers, LLC constitutes a new entity, as LHCI ceased its prior form of organization. *See* N.C. Gen. Stat. § 57D-9-23(a). More important though is the fact that LHCI surrendered its authority to do business in New York upon its surrender of authorization.[5] *See* **Ex. B**, LHCI's New York Department of State Filing. Following this surrender, Defendant Lowe's Home Centers, LLC was then registered in New York as a new corporation. *See* **Ex. C** Lowe's Home Centers, LLC's New York Department of State Filing. Accordingly, Defendants do not carry forward Lowe's Home Centers, Inc.'s purported exemption, because the exemption terminated upon Lowe's Homes Centers, Inc.'s surrender of its authority to do business in New York. If Defendants had wished for Lowe's Home Centers, LLC to hold a similar exemption, they simply could have filed for one as contemplated by NYLL § 191(1)(a)(ii).

Furthermore, the Court should not find that LHCI's exemption letter affects the disposition of this case, because NYLL § 191(1)(a)(ii) only contemplates that an **"employer"** may apply for the authorization to pay manual workers less frequently than weekly. Simply put, LHCI was never Plaintiff's employer. As of November 15, 2013, LHCI was not authorized to conduct business in New York. Plaintiff began working for Defendants in approximately May 2016. *See* Am. Compl. ¶¶ 9,36. Moreover, all the documents Plaintiff received from Defendants, including his paystubs, identified Defendant Lowe's Home Centers, LLC, a different entity, as his employer. *See* ECF No. 18-1. Defendants' contention that NYLL § 219 shields Defendants by allowing them to define Plaintiff as an employee is inapposite. Clearly, this statute reads to protect workers who's "*prior* employer" committed wage theft. *See* NYLL § 219(4) (emphasis added). Plaintiff was never employed by LHCI, and he could never establish that they were his "prior employer" or liable to

---

[5] Plaintiff does not possess the surrender authorization documents presumably filed by Defendants at this time.

him in any way.[6] It stands to reason that Defendants should not be allowed to use this statute to shield themselves from Plaintiff's claims.

Finally, the Court should judicially estop Defendants from claiming that they would be held liable for LHCI's violations or that LHCI is a continuation of Defendant Lowe's Home Centers, LLC business. Judicial estoppel is appropriate where a party assumes one position in a litigation, and then simply assumes a contrary position in order to prevail in another action. *See Intellivision v. Microsoft Corp.*, 484 Fed. Appx. 616, 619 (2d Cir. 2012) (citing *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). In deciding whether to assert judicial estoppel, a court looks to whether the party's new position is "clearly inconsistent" with its earlier position, whether a court accepted its earlier position, and that the party would derive an unfair advantage or detriment on the opposing party if not estopped. *See id.*

Here Defendants have attested multiple times that LHCI no longer exists, and have gone so far to state that it does not employ separate plaintiffs in different actions. *See* **Ex. A**.. For example, in *Cameron v. Lowe's Home Centers, Inc.*, an employee alleged that LHCI violated the Family Medical Leave Act. *See* No. 17 Civ. 201, ECF No. 1. (E.D.V.A. 2017). In response, Defendant Lowe's Home Centers, LHCI answered that LHCI "is not plaintiff's employer and therefore, is improperly named as defendant in this action. Plaintiff's employer is Lowe's Home Centers, LLC." *See* **Ex. A**, pg. 1. Similarly, in *Reeder v. Lowe's Home Centers, Inc.*, Defendant Lowe's Home Centers, LLC answered an employee's complaint against LHCI by stating "plaintiff incorrectly identifies [d]efendant as [LHCI]…Lowe's Home Centers, LLC employs [plaintiff]". *See* **Ex. A**, pg. 2.  These are "clearly inconsistent" positions to what Defendants are now arguing. Furthermore, while Plaintiffs are unaware if Defendants have ever won a ruling on these grounds,

---

[6] As discussed *infra*, when faced with lawsuits from other employees in separate matters Defendants have answered that LHCI was not plaintiffs' employer. *See* **Ex. A.**

the courts to which Defendants made these representations accepted them as part of Defendants' answers and corporate disclosures. Finally, Defendants would now derive an unfair advantage by claiming that LHCI still exists as Plaintiffs' employer, and that Defendants are availed to LHCI's purported exemption letter. Accordingly, the Court should now estop Defendants from using LHCI as armor against the current claims they are facing.

## II. NYLL § 191 PROVIDES FOR A PRIVATE RIGHT OF ACTION

Defendants contend that NYLL § 191 does not afford Plaintiff a private right of action primarily based on rulings that predate the First Department's ruling in *Vega v. CM & Assoc. Constr. Mgmt., LLC*. *See* 175 A.D. 1144 (1st Dept. 2019) (finding that a private right of action exists under NYLL § 191). The only post-*Vega* cases Defendants rely on are the identical Suffolk County Court decisions of *Kruty v. Max Finkelstein* and *Phillips v. Max Finkelstein* (together "*Max Finkelstein*"), which were decided by the same court on the same day, and besides the names of the plaintiffs, read exactly the same word for word. *See* No. 616616-2017 (Suffolk Cnty. Ct. Dec. 12, 2019); 115 N.Y.S.3d 866 (Suffolk Cnty. Ct. Dec. 12, 2019). As discussed below, the *Max Finkelstein* decisions, which are the only decisions to ever find that *Ikea U.S., Inc. v. Industrial Board of Appeals* precludes a private right of action under NYLL §191, are not controlling and do not even stand for the argument Defendants are attempting to advance. Instead, *Vega* is truly the only intermediate appellate court decision on this issue and should guide the Court's ruling on this matter. *See Scott v. Whole Foods Market Group, Inc.*, No. 18 Civ. 86 (SJF)(AKT), ECF Doc. No 58, (E.D.N.Y. Feb. 5, 2020) (finding that *Vega* is the "lone decision from an intermediate court" regarding whether there is a private right of action under NYLL § 191).

12

## A.  The First Department's Ruling in *Vega* Controls This Action

Whether or not NYLL § 191 contains a private right action is purely a question of state law. Accordingly, if there is no case law from the Court of Appeals on this issue, federal courts follow the rulings of the state appellate courts. *See DiBella v. Hopkins,* 403 F.3d 102, 112 (2d Cir. 2005) ("rulings from [state intermediate appellate courts] are a basis for 'ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise') (quoting *West v. Am. Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940).

The only appellate court ruling that could possibly guide the Court is *Vega v. CM & Assoc. Const. Mgmt., LLC*, where the First Department reasoned that untimely payment of wages constitutes an *underpayment* of wages, which affords Plaintiff a private right of action under NYLL § 198. 175 A.D. 3dat 1145. Furthermore, the *Vega* court explained that even if there was no right of action under NYLL § 198, § 191 provides a private right of action: "allowing [plaintiff] to bring suit would promote the legislative purpose of § 191, which is to protect workers who are generally 'dependent upon their wages for sustenance." *Id.* at 1146 (quoting *People v. Vetri,* 309 N.Y. 401, 405 (1955)).

Defendants attempts to counter *Vega* by arguing that *IKEA U.S., Inc. v. Indus. Bd. of Appeals* is a Second Department Appellate decision standing for the proposition that there is no private right of action for a violation of NYLL § 191(1)(a). 241 A.D. 2d 454 (2d Dept. 1997). This is a blatant misrepresentation of the holding in *Ikea*. In *Ikea*, the Second Department found that the employer "violated Labor Law § 191(1)(a) by failing to pay weekly wages to manual workers." *See id.* No argument or finding was made about damages in any regard. *See id.* Defendants only find support for this proposition in the *Max Finkelstein* cases, attempting to frame them as separate

decisions by different courts. *See* ECF No. 20-5, Pg. 16. As mentioned *supra*, these cases are identical decisions, authored by the same judge and rendered on the same day. *See* No. 616616-2017 (Suffolk Cnty. Ct. Dec. 12, 2019); 115 N.Y.S.3d 866 (Suffolk Cnty. Ct. Dec. 12, 2019). Furthermore, the *Max Finkelstein* decisions also center around the false premise that because there is no mention of liquidated damages in *Ikea*, there must be no avenue for a plaintiff to recover such damages in court. However, as specifically addressed in *Vega*, "[NYLL] § 198 explicitly provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to." *Vega*, 175 A.D. 3d at 1147 (citing *AHA Sales, Inc. v. Creative Bath Prods., Inc.*, 58 A.D.3d 6, 15 (2d Dept. 2008)). As the *Max Finkelstein* decisions took liberties in attempting to hold that *IKEA* stood for a proposition which it clearly did not, this Court should not rely on those cases in deciding the instant motion.

In fact, at least one court within the Second Circuit has found that *Ikea* actually stands for providing an avenue for plaintiffs to recover under NYLL § 191(1)(a). *See Cuzco v. Orion Builders, Inc.*, No. 06 Civ. 2789 (KMW)(THK), 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010) (citing 241 A.D. 2d 454 (2d Dept. 1997)). The court in *Cuzco* granted plaintiffs summary judgement on their NYLL § 191 claims as defendants did not pay manual workers weekly.  If there was no private right of action under NYLL § 191, Judge Wood certainly could not have had the authority to grant summary judgment and provide relief for such violation in court as a private right of action.

It is clear that *Vega* is the only Appellate Division case which addresses this issue. As set out below, Defendants cannot clear the high bar of convincing this Court that the Court of Appeals would find differently than the First Department in *Vega*.

### B.  The Weight of Authority Supports A Private Right of Action

Following *Vega*, courts in the Second Circuit have ruled that a private right of action does in fact exist. *See, e.g. Sarit v. Westside Tomato, Inc.*, No. 18 Civ. 11524 (RA), 2020 WL 1891983, at *4 (S.D.N.Y. Apr. 16, 2020) (denying defendants motion to dismiss NYLL § 191 claims); *Duverny v. Hercules Medical P.C.*, No. 18 Civ. 7652 (DLC), 2020 WL 1033048, at *6 (S.D.N.Y. Mar. 3, 2020) (denying defendant's motion for summary judgement as to plaintiff's NYLL § 191 claims); *Scott v. Whole Foods Market Group, Inc.*, No. 18 Civ. 86 (SJF)(AKT), ECF Doc. No. 58, (E.D.N.Y. Feb. 5, 2020) (affirming the courts' prior ruling to deny defendant's motion to dismiss § 191 claims, and describing *Vega* as the "lone decision from an intermediate court [that] is factually analogous"); *see also Rojas v Hi-Tech Metals, Inc.*, No. 702847/2019, 2019 WL 4570161, at *3 (N.Y. Sup. Ct. Sept. 11, 2019) (denying defendant's motion to dismiss NYLL § 191 claims, and reasoning that affording a private right of action is consistent with the holding of the Court of Appeals in *Seymore Gottlieb v. Kenneth D. Laub & Company, Inc.*) (citing 82 N.Y. 2d 457 (1993)).

Furthermore, even before *Vega*, multiple courts in this circuit found that a private right of action exists under NYLL § 191(1)(a). *See e.g. Scott v. Whole Foods Market Group, Inc.*, No. 18 Civ. 86 (SJF)(AKT), 2019 WL 1559424 (S.D.N.Y. Apr. 9, 2019) (denying defendant's motion to dismiss § 191 claims); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 404 (E.D.N.Y. 2015) (denying defendant's motion to dismiss NYLL § 191 claims); *Wang Kwong Ho v. Target Construction of NY Corp.*, No. 08 Civ. 4750 (KAM)(RER), 2011 WL 1131510, at *14 (E.D.N.Y. Mar. 28, 2011) (awarding damages under NYLL § 191); *Cuzco*, 2010 WL 2143662, at *4 (granting plaintiffs summary judgment for their NYLL § 191 claims).

15

Other than the *Max Finkelstein* cases, the only case Defendants can point to that was decided after *Vega* is *Arciello v. County of Nassau*, which does not address untimely payments made under NYLL § 191(1)(a), but instead discusses untimely overtime wages. No. 16 Civ. 3974, 2019 WL 4575145, at *8 (E.D.N.Y. Sept. 20, 2019). Furthermore, while *Arciello*'s decision was published ten days after *Vega*, the last brief filed on the motion to dismiss was filed before *Vega*'s decision, and no supplemental authority was provided to the Court. *See* No. 16 Civ. 03974 (JMA)(SIL) (E.D.N.Y.) (ECF Nos. 227, 235). This lack of guidance is evidenced in the *Aricello* court's language, which only found NYLL § 191 "*may*" not contain a private right of action, and further explained there was no mandatory authority to glean an answer from. 2019 WL 4575145, at *8. (emphasis added). However, it is clear now that untimely wage payments are to be considered underpayments for which a plaintiff can recover liquidated damages. *See Vega*, 175 A.D. 3d at 1145.

The uncertain language of *Aricello* is also found in other pre-*Vega* cases relied on by Defendant. *See e.g. Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d, 336, 360 n. 22 (S.D.N.Y. 2014) (awarding FLSA damages for untimely wage payments but noting, "[t]he NYLL *does not appear* to provide a similar remedy") (emphasis added); *Coley v. Vanguard*, No. 12 Civ. 5565 (PKC)(RER), No. 12 Civ. 5565, 2018 WL 1513628, at *13 (E.D.N.Y. Mar. 29, 2018) (finding that NYLL § 198 "*seems*" to not provide relief for late payment of wages") (emphasis added). Clearly, these courts suffered from a lack of definitive guidance on this issue, and cannot be held to now contravene *Vega*, which directly addresses this issue with a clear and succinct answer.

Defendants next turn to pre-*Vega* cases which incorrectly find that no private right of action exists under NYLL § 191. For example, in *Hussain v. Pakistan Int'l Airlines*, the court

equated a failure to pay timely wages with a recordkeeping violation. No. 11 Civ. 932 (ERK)(VVP), 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012). However, the court clearly ignored the legislative intent of NYLL § 191(1)(a) whereby hourly manual workers must be paid within seven days of the end of their workweek. To not be paid within seven days clearly results in harm to an hourly manual worker. *See Vega*, 175 A.D. 3d at 1145. Similarly, *Gardner v. D&D Electrical Const. Comp., Inc.* and *Hunter v. Planned Bldg. Servs., Inc.* cite *Hussain* to find that late payments do not afford a private right of action. No. 160249/2018, 2019 N.Y. Slip Op. 32389(U) (N.Y. Sup. Ct. Aug. 7, 2019); No. 715053/0217, 2018 N.Y. Slip Op. 31541 (N.Y. Sup. Ct. 2018).

These cases all argue that untimely wage payments do not constitute an underpayment of wages, and further compare the requirements of NYLL § 191 to statutes requiring employers to provide lunch breaks and keep accurate internal records. *Id.* The key difference between these statutes and NYLL § 191, however, is that failure to provide lunch breaks or keep internal records are not issues that are directly related to the payment of wages. On the other hand, NYLL § 191 lays out direct requirements to pay timely wages, and the late payment of wages constitutes an *underpayment* under New York law. *See Vega,* 175 A.D. 3d at 1145 (stating "the moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required"). These cases, which rely on statutes which do not relate to the payment of wages should not be granted deference by the Court. Furthermore, they cannot be found to clear the high bar articulated by *DiBella v. Hopkins*. *See* 403 F.3d at 112.

Finally, Defendants strangely turn to two cases that actually support Plaintiff's position. First, Defendants discuss *Mendez v. US Nonwovens Corp.*, to argue that when "the employer fails to make timely payment, an employee can seek to recover unpaid or underpaid wages." *See* ECF

No. 20-5 pg. 15 (quoting 2 F. Supp. 3d 442, 453 (E.D.N.Y. 2014)). As mandated by *Vega*, untimely payments are to be considered underpayments. 175 A.D. 3d at 1145 ("the moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required"). Furthermore, this quote read fully clearly expresses support for a private right of action under the NYLL for untimely wage payments: "under the NYLL 'if the employer fails to make timely payment, an employee can seek to recover unpaid or underpaid wages, and unpaid overtime for hours worked in excess of forty per week, by either filing a complaint with the Commissioner, or commencing an action.'" *See Mendez*, 2 F. Supp. 3d at 453 (quoting *Hinterberger v. Catholic Health,* No. 08 Civ. 380S, 2009 WL 4042718, at *3 (W.D.N.Y. Nov. 19, 2009). Similarly, the court in *Yu Y. Ho v. Sim Enterprises, Inc.* found that "[w]here wages are not timely paid, the court shall allow such employee to recover the full amount of any underpayment' of wages." No. 11 Civ. 2855 (PKC), 2014 WL 1998237, at *13 (S.D.N.Y. May 14, 2014) (citing NYLL §§ 191(1)(a), 1981-a)). Clearly, this is an endorsement of a private right of action under the statute.

Consequently, Defendants have offered this Court very little with which to contravene the First Department's decision in *Vega*, and the overall weight of authority backs Plaintiff's position that there is a private right of action under NYLL § 191(1)(a). Therefore, the Court should find that a private right of action exists under this statute.

### III. LIQUIDATED DAMAGES AS PROVIDED FOR IN THE NYLL ARE CONSTITUTIONAL AND APPLICABLE TO THIS MATTER

Defendants also argue against the liquidated damages provisions of NYLL § 198, claiming that they are unconstitutional punitive damages and inapplicable to the current action. *See* ECF No.20-5 pgs. 27-28. Defendants' first argument, classifying liquidated damages as an unconstitutional punitive damage is in error. It is well settled that since NYLL § 198 was amended on November 25, 2009, the liquidated damages provisions under this statute are identical to the

FLSA. *See Rana v. Islam*, 887 F. 3d 118, 123 (2d Cir. 2018) (finding that "it is clear that the New York State legislature rewrote its liquidated damages provision to cover the same ground as the FLSA" and that "there are no meaningful differences" between the FLSA's and NYLL's liquidated damages provisions).[7] It is further settled that the FLSA's liquidated damages are compensatory and not punitive. *See Hernan v. RSR Security Services, Ltd.*, 172 F. 3d 132, 142 (2d Cir. 1999) ("liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages") (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583 (1942). Defendants offer no justification as to why these damages should be considered punitive other than to claim that there may be a large financial penalty for Defendants to face. *See* ECF No.20-5 pgs. 28. The Court should not be moved by this argument.

The legislative purpose of NYLL § 191(1)(a) "is to protect workers who are generally 'dependent upon their wages for sustenance.'" *Vega*, 175 A.D. 3d at 1146. Simply put, the legislature identified manual workers as a class of employees that rely on their weekly payment of wages and suffer injury when they are denied such. While Defendants protest that Plaintiff's wage payments were *only* a week late, the fact of the matter is that Plaintiff has suffered an injury as defined by the legislature and is owed compensatory damages to make him whole.[8] In such cases "double damages are the norm." See *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citing *Herman.*, 172 F.3d at 142. As such, Defendants should not be able to escape this obligation by vaguely asserting that these are punitive damages they should not have to face.

---

[7] The Second Circuit also differentiated between liquidated damages under the NYLL and punitive damages awarded by the district court. *See Rana*, 887 F. 3d at 119, n. 1.
[8] To be clear Plaintiff is not seeking 52 weeks of damages as alleged by Defendants, only liquidated damages on the weeks Defendants compensated Plaintiff and the putative class on an untimely basis.

Furthermore, Defendants' argument that liquidated damages are improper because there were no underpayments misses the mark. In doing so, Defendants assert that there is "no dispute" regarding the alleged underpayments. However, this is the exact nature of the dispute at hand, because Defendants' untimely payment of wages constitute underpayments of those wages. *See Vega,* 175 A.D. 3d at 1146. Accordingly, liquidated damages are appropriate in this matter.

Finally, the Court should not accept Defendants argument that liquidated damages cannot be awarded because Defendants acted in good faith. In order to prove good faith (an affirmative defense), an employer must demonstrate that they took affirmative steps to follow the NYLL. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp 3d 481, 503 (S.D.N.Y. 2017) (internal citations omitted). As preliminary matter, this is a merits-based argument that is not appropriate for th is stage of litigation. *See Spicer v. Pier Sixty LLC*, No. 08 Civ. 10240, 2011 WL 446144, at * 3 (S.D.N.Y. Feb. 7, 2011) (finding that employer's claim of good faith was an affirmative defense that could not be considered in determining at 12(b)(6) motion).

Defendants have not shown any affirmative steps taken to comply with this law, nor could they at this stage of the litigation. Furthermore, the requirements of NYLL § 191(1)(a) are extraordinarily simple – pay manual workers weekly unless you seek and receive an exemption letter. Defendants here merely ignored the law. It does not pass the laugh test for a multi-billion-dollar operation to so flagrantly disregard the requirements of NYLL § 191(1)(a), and then argue they acted in substantive good faith. Defendants went so far as to identify Lowe's Home Centers, LLC as a new company to the Department of State. *See* ECF No 20-4. Clearly, if Defendants had wanted Lowe's Home Centers, LLC to be authorized to pay their manual workers biweekly, they should have sought the exemption on behalf of such new entity. Defendants clearly did not seek

any exemption for Lowe's Home Centers, LLC when they easily could have done so, of course they failed to act in good faith.

## IV. DEFENDANTS' WAGE STATEMENTS VIOLATE NYLL § 195(3)

Last, Defendants take umbrage with Plaintiff's claims under NYLL § 195(3), claiming that Plaintiff cannot identify why the wage statement Defendants proffered are incorrect. While Plaintiff concedes that this claim may only survive if Plaintiff's NYLL § 191 claim does, should the Court hold that Plaintiff's first claim is not dismissed, it should also find that this claim survives dismissal as well.

NYLL § 195(3) requires that, with every payment of wages, employees be furnished with a statement containing "the dates of work covered by that payment of wages…the number of regular hours workers, and the number of overtime hours worked" *See* NYLL § 195(3). Furthermore, the requirements of NYLL § 195(3) were put in by the legislature to "protect the rights of employees such as [p]laintiffs, and their procedural provisions are specifically designed to guard against the concrete harm that workers are subject to when they are mis- or uninformed regarding their rights." *See Hicks v. T.L. Cannon Management Corp.*, No 13 Civ. 06455 (EAW), 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018) (declining to dismiss plaintiff's 195(3) claims). Furthermore, the New York Legislature "passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them." *See Imbarrato v. Banta Management Services, Inc.*, No. 18 Civ. 5422, 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020). It is clear that for wage statements to conform to NYLL 195(3), they must accurately inform an employee of his rights. *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 469 (E.D.N.Y. 2015) (holding that the purpose of the Wage Theft Prevention Act was to keep

employees properly appraised of their rights, and paystubs that reflect an incorrect wage do not satisfy NYLL § 195(3)).

As discussed, *supra* Plaintiff was underpaid due to untimely wage payments. Furthermore, Defendants did not provide Plaintiff with wage statements which reflected his entitlement to weekly wages, as these statements did not show the number of hours worked per week. *See* ECF No. 18-1. If Defendants were to comply with NYLL § 195(3), they would have to issue their manual workers weekly wage statements. Defendants' failure to do so leads Plaintiff and his similarly situated manual workers to being misinformed about their right to timely payment of wages. As Defendants failed to issue wages statements on a weekly basis, they have violated NYLL § 195(3), and the Court should not dismiss this claim. *See* ECF No. 18-1.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. In the alternative, should the Court find any part of Plaintiff's pleadings lacking, Plaintiff would respectfully request an opportunity to amend to redress any deficiencies the Court identifies. *See e.g.*, *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir.1999) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").

Dated:  New York, New York
        August 31, 2020

                                        Respectfully submitted,

                                        /s/ Brian S. Schaffer
                                        Brian S. Schaffer

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Hunter G Benharris
                                        28 Liberty Street
                                        New York, New York 10005
                                        Telephone: (212) 300-0375

                                        *Attorneys for the Plaintiff and*
                                        *putative class*

23